(No. 36486.—)

THILLENS, INC., Appellant, *vs.* THE DEPARTMENT OF FINANCIAL INSTITUTIONS *et al.,* Appellees.

*Opinion filed January 23, 1962.—Rehearing denied March 22, 1962.*

TENNEY, SHERMAN, BENTLEY & GUTHRIE, of Chicago, and BRUNSMAN & GIFFIN, of Springfield, (JOHN E. BAKER, WILLIAM M. GIFFIN, and CLELL L. WOODS, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and AUBREY KAPLAN, for defendant-appellees; and WILLIAM A. CUNNEA, of Chicago, and CONRAD NOLL, JR., of Springfield, for intervenors-appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Sangamon County affirming certain administrative decisions of the Director of the Department of Financial Institutions whereby 41 applications for ambulatory currency exchange licenses filed by plaintiff, Thillens, Inc., were denied. We have jurisdiction on direct appeal under authority of section 22.02 of the Community Currency Exchanges Act, (Ill. Rev. Stat. 1961, chap. 16½, par. 52.2,) and plaintiff assigns as error (1) that the Director acted in an arbitrary, improper and capricious manner, and (2) that the findings upon which the orders of denial were based are either unsupported by substantial evidence or against the manifest weight of the evidence.

Plaintiff is in the business of operating an ambulatory currency exchange which normally consists of transporting currency belonging to plaintiff to the premises of business establishments, usually pursuant to contract, and the cashing of payroll checks of employees on the premises of the employer. In some instances, we gather from the record, plaintiff cashes one large check for the employer and the latter pays his employees in cash. This business, as well as that of operating nonambulatory currency exchanges, is regulated and controlled by the Community Currency Exchanges Act, hereinafter referred to as the act, wherein the legislature has "found and declares" that "the number of community currency exchanges should be limited in accordance with the needs of the communities they are to serve," and that "it is in the public interest to promote and foster the community currency exchange business and to assure the financial stability thereof." Ill. Rev. Stat. 1961, chap. 16½, par. 30.

Pursuant to the provisions of section 2 of the act, which directs that an ambulatory currency exchange shall secure a license for the conduct of its business at each and every location served, (See: Ill. Rev. Stats. 1957, 1959, chap. 16½, par. 32,) plaintiff, during the years 1958 and 1959, made a series of applications for licenses at various locations in Chicago and Cook County. Some applications were allowed but we are concerned here with 41 such applications which were denied. And while the defendants-appellees assign as error that the 41 causes of action were improperly joined in the one proceeding for review, a contention unsuccessfully raised below, this issue, and others raised by defendants, are not properly before us inasmuch as no cross appeal was taken so as to preserve and present them for review.

Each of the applications filed by plaintiff set forth the location and the name and address of the employer to be served. Upon receipt thereof, and as commanded by section 4.3 of the act, (Ill. Rev. Stats. 1957, 1959, chap. 16½, par.

34.3,) the Director caused an investigation to be made of the need of the community for the establishment of an ambulatory community currency exchange business at each location. Investigator's reports were filed in each instance. But what those reports contained, other than the proximity of existing community currency exchanges to the locations for which licenses were sought, does not appear in the abstract of record presented to us.

The applications, investigator's reports, written objections, requests for plaintiff's service, letters for and against the issuance of licenses and any other relevant information at hand was then presented to the Department's supervisor of currency exchanges who concluded in each of the 41 cases that the need of the community for ambulatory currency exchange service at the locations applied for had not been established, and that the matters should be set down for hearing for the purpose of final determination. Thereafter, hearings were held by the Department, to which plaintiff was a party, and at their conclusion the hearing officer in each case prepared and submitted to the Director an abstract of the testimony heard, a summary of the documentary evidence, his findings and recommendations, and the reasons supporting his conclusion that the particular application should be denied.

The Director adopted the findings, recommendations and conclusions of the hearing officer in each of the 41 cases and entered final administrative orders denying plaintiff's applications. In due time, plaintiff instituted the proceeding for judicial review from which this appeal arises. The court below permitted the operators of 12 community currency exchanges, (who do business in proximity to some of the sites for which location licenses were sought,) to intervene, and such intervenors have likewise filed a brief in this court in support of the judgment which affirmed the director's decisions. The appeal, already unique in that it presents 41 final administrative decisions for review, is

further complicated by the presentation of an abstract which abstracts none of the testimony or exhibits upon which the respective decisions were based, and sets forth the substance of only one of the decisions sought to be reviewed.

As grounds for its first attack on the Director's decisions plaintiff contends that the Department has adopted an arbitrary and capricious rule of thumb whereby plaintiff's applications for licenses are denied if the particular license site is situated within one-half mile of a community currency exchange. Nothing in the record supports this charge and its logical extension to the present appeal is that the administrative hearings were a sham and that the Director, in all 41 cases, disregarded the other evidence and predicated his denials of the applications solely upon the supposed rule of thumb. But, as we have stated, plaintiff has not abstracted the evidence upon which the Director's decisions were based, thus precluding a determination of whether those decisions had basis in the evidence or were in fact the product of an arbitrary rule. Rule 38 of this court provides that a party prosecuting an appeal shall present an abstract sufficient to present fully every error relied upon for reversal, (Ill. Rev. Stat. 1961, chap. 110, par. 101.38,) a duty which extends to the inclusion of evidence essential to the disposition of the contentions urged. (*People ex rel. Rose* v. *Craig,* 404 Ill. 505; *People ex rel. Oller* v. *New York Central Railroad Co.* 388 Ill. 382.) This court will not search the record for the purpose of overcoming deficiencies in the abstract but, instead, everything necessary to decide the questions raised on appeal must appear in the abstract. (*Department of Finance* v. *Sheldon,* 381 Ill. 256; *Department of Finance* v. *Bode,* 376 Ill. 374.) The rule has been adopted to promote the work of the court, and, since it has the force of law, failure to comply therewith warrants a court of review in affirming the judgment. *People ex rel. Rose* v. *Craig,* 404 Ill. 505.

We interject at this point that plaintiff filed a motion

in this court, which was granted, for leave to file only a partial abstract of record. Nothing in the motion or order, however, relieved plaintiff of its duty to present an abstract sufficient to present fully the errors relied upon for reversal.

Plaintiff also makes the general claims that the decisions of the Director are not supported by the evidence, or that they are against the manifest weight of the evidence, and that the Director and the Department relied solely upon their own knowledge to support their findings. Here again, however, unless we assume the burden of searching the record, such matters cannot be determined from an abstract which presents none of the evidence.

Section 4.1 of the act, (Ill. Rev. Stats. 1957, and 1959, chap. 16½, par. 34.1,) which has to do with the investigation of license applications for a community currency exchange, provides in part as follows: " 'Community,' *as used in this Act,* means a locality where there may or can be available to the people thereof the services of a community currency exchange reasonably accessible to them." (Emphasis supplied.) Thereafter, the section concludes as follows: "If the issuance of a license to engage in the community currency exchange business at the location specified, will not promote the convenience and advantage of the community in which the business of the applicant is proposed to be conducted, then the application shall be denied." When section 4.3 of the act was reached, dealing with the investigation of license applications for an ambulatory currency exchange, the legislature did not repeat its definition of "community," but, in the precise language employed in section 4.1, above, provided that such licenses were also to be denied if the operation of the business at the location specified will not promote the convenience and advantage of the community. Ill. Rev. Stats. 1957, and 1959, chap. 16½, par. 34.3.

The single administrative decision which has been ab-

stracted shows that the Director, in administering license applications for ambulatory exchanges under section 4.3, utilizes the definition of "community" found in section 4.1. Plaintiff urges that this is improper, and first contends the definition is limited in its scope to license applications for community currency exchanges and cannot therefore be applied where the license application is for the operation of an ambulatory exchange. The simple answer to this contention is found in the act itself, inasmuch as section 4.1 expressly provides that the same definition shall apply wherever the term "community" is "used in this Act." The Community Currency Exchanges Act is a law complete in itself,; its various sections are *in pari materia* and all must be read to arrive at the legislative intent. Having provided a general and all-inclusive definition of "community" in section 4.1, it was unnecessary for the legislature to repeat itself when it employed the term on subsequent occasions. Cf. *Richards* v. *Board of Education,* 21 Ill.2d 104, 113.

Next, in the alternative, plaintiff argues, by a process of rationalization which totally ignores section 4.3, that if the definition in section 4.1 can be said to apply to license applications for ambulatory exchanges, then the term "community" must be treated as being synonomous with the term "location," since it is for location licenses that an ambulatory exchange must apply. Under such a construction, we are told, the location at which the services of an ambulatory exchange are available would become the "community" served by the ambulatory exchange. However, the legislature did not make this distinction, and this court may not read it into the statute as plaintiff suggests. Instead, the plain wording by which the legislature extended its definition of "community" to all of the provisions of the act, and the clear language of section 4.3 which follows, manifest the intent that the term should have the same meaning whether the license application under consideration is for a community exchange or an ambulatory exchange.

What has been said disposes of plaintiff's further argument that the Department and its Director misapply the "convenience and advantage" test when considering license applications for ambulatory exchanges. The contention is bottomed upon two assumptions. First, that the "convenience and advantage" of the community is measured solely by an arbitrary rule based upon distance between the exchanges; second, that the terms "community" and "location," as used in the act, were intended to by synonomous. As pointed out, the first assumption cannot be validated from the abstract presented, while the second is untrue.

Since one of the objectives of the Community Currency Exchanges Act is to assure the financial stability of existing community currency exchanges, plaintiff suggests that before a license application for an ambulatory exchange can be denied there must be proof that the granting of the ambulatory license would affect the stability of an existing exchange. We see no merit to such a claim. Not only would it be impossible to predetermine the future effect of granting an ambulatory license, but the sole test provided by section 4.3 as well as section 4.1, is the convenience and advantage of the community. Further, as pointed out in *Durchslag* v. *Smith,* 14 Ill.2d 549, the objective of assuring financial stability is achieved by preventing the saturation of an area with currency exchanges with possible financial instability for all.

Finally, the plaintiff claims that the Department and its officials are biased against ambulatory exchanges to such a degree that license applications of the latter do not receive fair and impartial consideration. To support this serious charge, plaintiff interprets the testimony of one Department employee as showing that correspondence objecting to the issuance of a license is brought to the attention of the hearing officer as a matter of course, while correspondence favoring the license is filed away and is not communicated to such officer except on the affirmative action of the appli-

cant. We find nothing which warrants such a conclusion. While the record does show different departmental procedures between the handling of objections and the processing of letters favoring or requesting plaintiff's service, there is no basis in the evidence presented that the latter are ignored or kept from the departmental employees who process, investigate and hear the applications for licenses.

The judgment of the circuit court of Sangamon County was correct and is affirmed. *Judgment affirmed.*