**People of the State of Illinois, Appellee, v. Joe Ray, Appellant.**

Gen. No. 50,816.

First District, First Division.

February 27, 1967.

Stuart A. Trais, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Joe Ray, and codefendant, George Brewer, were jointly indicted and tried for the crime of burglary. George Brewer pleaded guilty and Joe Ray pleaded not guilty and waived a jury trial. Ray was found guilty and sentenced to serve two to four years in the penitentiary. This appeal is brought by defendant, Joe Ray, contending that he never had exclusive possession of the stolen property and, in fact, had no possession at all, which he says creates a reasonable doubt

as to his guilt and further, that the State failed to prove beyond a reasonable doubt that he committed the crime either by actually breaking or entering or by acting as an accomplice.

On the evening of January 8, 1965, a locked warehouse of Colby and Sons, 212 North Sangamon Street, was broken into and several cartons of articles, including an adding machine and a typewriter, were stolen.

At 9:00 p. m. that same evening Officer Norman Angelo and his partner, while on routine patrol, stopped an automobile for failure to stop at a stop sign at Lake and Sangamon Streets. He said that Joe Ray, the driver, did not have a driver's license and would not explain where he was coming from or was going. When the driver stepped out of the car he noticed large boxes on the rear seat, a typewriter underneath and an adding machine on the floor of the front seat. The other occupant, codefendant Brewer, was asked to step out, ran and was apprehended. At the police station they observed the name of John Colby, 212 North Sangamon, on the boxes. He said that when they stopped the car it was a block and a half from the Colby warehouse and when they questioned the defendant about the merchandise he answered he was just in the car and didn't know where it came from or how it got in the car. He also testified, on cross-examination, that when he opened the trunk of the car with the car's keys he found another box and two framed pictures.

Brooks Davis, Colby's sales manager, identified the recovered cartons and their contents, and the typewriter, adding machine and paintings as property of Colby's.

Gladys Ray, the defendant's wife, testified that her husband was a mechanic and drove his car part time for Bob's Livery Service. She said that on the evening in question she borrowed his car to take their child to the hospital and returned the car to him at Bob's Livery Stable on Paulina Street about 9:00 p. m.

Dorothy Gaddis testified for the defendant that she was a telephone operator for the livery service and was working on the evening in question. Her job was to take calls for trips and dispatch the drivers who used their own cars. She said she got a call about 10:30 or 11:00 p. m. from a person who gave his name as George who requested that she send a cab to Lake and Sangamon which was the last call she gave to the defendant.

Ozzie Edwards testified that he worked part time for Bob's Livery Service and he saw the defendant on the day in question at Bob's between 9:30 and 10:00. A call came in at that time and Dorothy gave it to the defendant. James Miller, defendant's father, testified that he went to the Cab Stand at 9:00 to meet his son who was going to drive him to Kankakee. George Brewer, codefendant, invoked the privilege against self-incrimination when called as a witness for Ray.

The defendant, Joe Ray, testified that he was a part-time driver for Bob's Livery Service at 14 South Paulina and that he reported for work about 5:00 p. m. on January 8th. He said his wife borrowed his car to take their baby to the hospital and returned it about 9:00 p. m. He said Dorothy Gaddis told him to go to Sangamon and Lake and pick up a man with a brown jacket. He said when he arrived there a man in a brown jacket instructed him to drive his car near an alley of a building where the man loaded boxes into his car. He then was stopped by the police who told him he didn't stop at a stop sign and had no taillights and he couldn't produce a driver's license because he didn't have one. When the officer asked him what was on the back seat he told him he didn't know and to "ask the gentleman, it belongs to him." He also said he never saw Brewer before.

On cross-examination he testified that he saw Brewer put boxes on the back seat, but didn't see him put a typewriter there or see him put an adding machine

313

in the front seat because he was listening to his radio all the time. He said the man asked him to put some articles in the trunk and he opened it and put them there.

The defendant contends that in order to sustain a conviction for burglary upon the possession of stolen property it must be shown that there was possession, that it was recent, exclusive, unexplained, and that there were no other facts which created a reasonable doubt as to the defendant's guilt. He argues that the burden is on the prosecution in a criminal case to establish beyond a reasonable doubt not only a defendant's guilt, but also the essential elements of the crime, citing People v. Sanford, 24 Ill2d 365, 181 NE2d 118.

Stated another way, the defendant concedes that it is a well settled rule that the recent, exclusive and unexplained possession of stolen property by an accused person in and of itself gives rise to an inference of guilt, which may be sufficient to sustain a conviction in the absence of other facts and circumstances which leave in the mind of the jury, or the trial court if a jury is waived, a reasonable doubt as to his guilt. People v. Franceschini, 20 Ill2d 126, 169 NE2d 244; People v. Woods, 26 Ill2d 557, 188 NE2d 1.

The defendant maintains that he never had exclusive possession and, in fact, had no possession at all. He also insists that his explanation and defense to the burglary charge was sufficient to negate any presumption of guilt, citing People v. Barnes, 311 Ill 559, 143 NE 445 and People v. Urban, 381 Ill 64, 44 NE2d 885.

In Barnes the defendant was a passenger in a stolen car and the driver admitted stealing the car and assumed full responsibility for the theft. The defendant testified that after their car broke down her friend returned with the car in question and when she asked him where he got it was told it was none of her business. The Court concluded that the evidence only showed that

the driver stole the car and that it was in his exclusive possession from that time until he was arrested and that it was not shown by any affirmative act of the defendant that she actually advised, encouraged, aided or abetted the perpetration of the crime. The Court went on to say that mere presence of a person is not sufficient to constitute him a principal, or mere association with a stolen article is not necessarily possession of it, unless there is something in his conduct showing a design to encourage, incite or in some manner aid, abet or assist the actual perpetrator of the crime.

In Urban the Court held that the instruction given to the jury that exclusive possession if unexplained is sufficient to raise an inference of guilt was improperly given. There the defendant was arrested when he unlocked a garage which he rented with other persons and in which items from a burglary and burglarious tools were located. Other persons had keys to the garage and the Court concluded that the evidence did not show that Urban at any time had exclusive possession of the tools and other implements found in the garage.

In People v. Dougard, 16 Ill2d 603, 158 NE2d 596, also cited by the defendant, the codefendant was found by the police behind the burglarized premises with a stolen box of tools. The police found Dougard who had driven with the codefendant to that area about 150 to 175 feet away from the premises relieving himself in an alley. Dougard denied he burglarized the premises and said he was drunk and while he was relieving himself he didn't know or notice where the codefendant went. The codefendant who pleaded guilty testified that he never said anything to Dougard about entering the premises nor did they have an understanding prior to this time to attempt any burglary. He said he saw an open window, climbed in, threw the box out and climbed out. The Court held that the judgment of conviction rested upon circumstantial evidence that raised little

315

more than a suspicion against Dougard and left a grave and serious doubt.

■■ In the case before us the situation is entirely different. Here the defendant Ray was arrested driving his automobile within two blocks of the recently burglarized premises and the stolen items were found in his car and the trunk. When the police questioned him concerning the merchandise he answered that he had no knowledge either, "where it came from or how it got in the car." Officer Angelo also said that when both defendants were questioned in the squad car, after being arrested, as to what they were doing in the car, neither one would answer. The trial judge was confronted with this evidence and the defense that a burglar called a cab and the defendant responded; and near an alley after 9:00 p. m. the burglar put the items in the front and back seats and the trunk of the car, which was opened by the defendant, and then they sat together in the front seats. A trial judge is not required to believe an unreasonable story of the defendant and it is apparent that this unbelievable story was not convincing to the court. The credibility and weight to be given such testimony is for the trial judge who saw and heard the witnesses. People v. Merritt, 29 Ill2d 423, 194 NE2d 292.

■ We conclude that the evidence and surrounding circumstances establishes such unexplained, exclusive possession of recently stolen property as would justify the conviction. People v. Reynolds, 27 Ill2d 523, 190 NE2d 301. In Reynolds a stolen car filled with stolen merchandise was stopped for a traffic violation. Reynolds, a passenger, denied the burglary, and testified that he had been drinking and accompanied the driver who also testified that Reynolds did not know the automobile and items in it were stolen. In affirming the burglary conviction, the Court held that although Rey-

316

nolds was not driving the automobile he was in joint possession of stolen property with the codefendant, and that recent, exclusive, and unexplained possession of stolen property, either singly or jointly with others, may raise an inference of guilt.

The judgment of the Criminal Division of the Circuit Court is affirmed.

Judgment affirmed.

MURPHY, P. J. and ADESKO, J., concur.