**People of the State of Illinois, Plaintiff-Appellee, v. William Langford, Defendant-Appellant.**

**Gen. No. 69–111.**

Second District.
May 21, 1970.
Rehearing denied June 18, 1970.

Marco and Mannina, of Downers Grove, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Frank J. Petru, Assistant State's Attorney, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

The defendant, William Langford, a DuPage County Deputy Sheriff, was indicted on six counts of burglary and theft. A jury found him guilty on Count 1 of the indictment, which charged him with burglary, and not

guilty on the remaining counts. Prior to the trial, the defendant filed a motion to suppress his confessions or admissions. The court conducted a hearing on the motion, sustained the motion as to an oral confession made by the defendant on January 21, 1967, and denied the motion as to a confession made on January 20, 1967.

On appeal, the defendant alleged that the trial court committed error in failing to suppress the confession of January 20, 1967, and in failing to rehear the motion to suppress when new evidence was produced at the trial; that the evidence was insufficient to prove him guilty beyond a reasonable doubt; and, finally, that the trial court improperly denied certain of the defendant's jury instructions.

At the hearing on the motion to suppress, Chief Deputy Wayne Shimp testified that on January 20, 1967, he received a call from the defendant, requesting that he come to the defendant's house; that when he arrived, the defendant escorted him into a bedroom of the house; that the defendant then told his wife to bring them some drinks; that a conversation ensued during which they discussed a burglary which had taken place at the Wooddale High School construction site; and that after about a half hour of conversation, the defendant broke down and cried and stated to Shimp that he didn't know why he had done it.

From the record, it appears that Shimp had asked no questions directly designed to elicit an admission or confession before the defendant made his statement; and that prior to their conversation, Shimp had not given the defendant the requisite advice concerning his constitutional rights as set forth in Miranda v. Arizona, 384 US 436, 16 L Ed2d 694 (1966).

On cross-examination, Shimp testified that when he went to the defendant's house he was convinced that the defendant was involved in some way in the burglary,

and that he was not investigating anyone else in connection with it. In Miranda v. Arizona, at page 444 of 384 US, the Supreme Court stated:

> ". . . the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of any attorney, either retained or appointed. . . ."

While it is acknowledged that the defendant was under suspicion for the burglary in question, the Miranda doctrine does not extend to the circumstances surrounding his confession of January 20. That confession was spontaneous; it was not initiated by law enforcement officers and was not the result of any direct interrogation of the defendant designed to elicit an admission or confession; and it took place in the defendant's own home, under conditions where Shimp, although alert to obtain any available information concerning the burglary, was in no manner taking any affirmative action to elicit a confession from the defendant. The defendant had called Shimp and asked him to his home; he offered, and gave Shimp a drink; and he willingly and voluntarily, outside

440

of the presence of his family, talked about the burglary—the matter which had prompted him to ask Shimp to come to his home. We believe that the defendant's confession was volunteered and thus was not barred by Miranda.

█ The setting of the confession was not the "custodial interrogation" of a person who "has been taken into custody or otherwise deprived of his freedom of action in any significant way" to which the admonitions of Miranda are directed. Under these circumstances, Shimp was not required to give the warnings set forth in Miranda, and he was under no duty to stop the defendant in the course of making a confession. The ruling of the trial court as to the admissibility of the confession of January 20, 1967, was correct.

The defendant next contends that testimony during the trial revealed that his confession of January 20, 1967, was prompted by promises of leniency if he would admit his guilt; and that, therefore, the confession was involuntary and the court should then, of its own motion, have reheard the motion to suppress.

At the trial, the defendant's brother, Robert Langford, testified that on January 20, prior to the time that Shimp went to the defendant's home, he (Robert Langford) had talked with Sheriff Springborn, Shimp and a Sergeant Devaney in the sheriff's office; that he was told by the officers that some goods had been taken from a trailer in Addison, Illinois; that the owner of the goods only wanted a return of these items or their equivalent in cash, at which time he would drop the charges; and that if William Langford would confess, he would receive a short suspension, but would be returned to the force when the matter quieted down. Robert Langford further testified that he was advised that he had been called to the sheriff's office because he was the defendant's brother, and that the officers believed that he could help persuade the defendant to do something. Immediate-

ly after this meeting, Robert Langford met his brother, the defendant, and they discussed the matter. Robert testified that he told the defendant the nature of the conversation in the sheriff's office and indicated that the defendant should pay for the goods rather than lose his job.

Robert Langford's testimony at the trial was, thus, to the effect that Sheriff Springborn had made promises of leniency to him for his brother, the defendant, and that he, in turn, conveyed these promises to his brother; and that it was only because of this that the defendant confessed. The defendant makes much of the fact that the Sheriff was not called at the trial to rebut the testimony regarding promises of leniency. However, Robert Langford also testified concerning a meeting which took place in February of 1967, which was attended by him, the defendant, Deputy Shimp and Sheriff Springborn. The matter of promises of leniency was discussed at this meeting, and Robert Langford testified that at this meeting Sheriff Springborn denied ever making any promises of leniency to him.

The defendant's testimony relative to the February, 1967 meeting, was substantially the same as that of his brother. Interestingly, the defendant's testimony of his conversation with his brother, immediately after the meeting at which the latter supposedly received the promises of leniency, was that his brother told him that what the sheriff "wanted was to clear the situation up in whatever manner was available."

■■ We are satisfied that the trial court was aware of its duty to and that it did consider all of the testimony relative to the purported promises of leniency. (See: The People v. Hudson, 38 Ill2d 616, 619–623 incl., 233 NE2d 403 (1968).) The question of whether a confession is voluntary is determined on the record, and is largely within the discretion of the trial court. People v. Williamson, 101 Ill App2d 199, 204, 242 NE2d 313

(1968). The trial court need not be convinced beyond a reasonable doubt as to the voluntariness of the confession, and its finding will not be disturbed by us unless contrary to the manifest weight of the evidence, or unless the court has committed an abuse of discretion. The People v. Nicholls, 42 Ill2d 91, 101, 245 NE2d 771 (1969); The People v. Hartgraves, 31 Ill2d 375, 378, 202 NE2d 33 (1964).

■ We have examined the entire record (see: Davis v. North Carolina, 384 US 737, 741, 742, 16 L Ed2d 895 (1966)), and we believe that the trial court's determination as to voluntariness was not contrary to the manifest weight of the evidence. The testimony of the denial of any promise of leniency by the Sheriff at the subsequent meeting in February of 1967, coupled with the testimony of the defendant, himself, with reference to what his brother had related to him from his conversation with the sheriff, provide adequate basis for the trial court's determination.

■ The defendant further contends that his guilt was not established beyond a reasonable doubt. This contention is based on the fact that, except for the confession of January 20, 1967, the evidence against him was circumstantial. However, we concur with the trial court in its holding that the confession was admissible; and based on this confession and circumstantial evidence, with which the record is replete, we cannot say the finding of a jury was contrary to the manifest weight of the evidence. The defendant's citations refer to cases where the only evidence of the defendant's guilt was circumstantial and they are not applicable. Under these circumstances, we will not substitute our judgment for that of the jury. The People v. Nicholls, supra, 95.

■ Finally, the defendant contends that the court erred in refusing to give his tendered instructions, Nos. 4, 7 and 8. He concedes that these instructions are applicable only where all of the evidence is circumstantial.

443

While that may be the defendant's "theory" of the case, we have held that the oral confession was properly admitted into evidence by the trial court. In the light of this holding, all of the evidence was not circumstantial, and it would have been improper for the trial court to give the tendered instructions.

For the reasons stated, the judgment of the trial court is affirmed.

Judgment affirmed.

MORAN and SEIDENFELD, JJ., concur.