**People of the State of Illinois, Plaintiff-Appellee, v. Leonard Ricketson and George Artin, Defendants-Appellants.**

Gen. No. 69–143.

Second District.

September 25, 1970.

Rehearing denied and supplemental opinion November 19, 1970.

Kevin P. Connelly and Edwin L. Douglas, of Wheaton, and Richard B. Califano and David E. Feldman, of Chicago, for appellants.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Stephen D. Dotson and Malcolm F. Smith, Assistant State's Attorneys, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

The defendants, Leonard Ricketson and George Artin, were charged by indictment with the crimes of burglary, possession of burglary tools, theft and bribery. Each entered a plea of not guilty. At the trial, the jury found Ricketson guilty of all charges, and found Artin guilty of all charges except bribery. The court thereafter sentenced Ricketson to a term of from five to ten years in the penitentiary, and sentenced Artin to a term of from three to eight years.

The defendants jointly prosecute this appeal and contend that the trial court erred: (1) in denying the defendants' motion to suppress evidence allegedly seized in violation of Article II, section 4 of the Illinois Constitution and the Fourth Amendment to the United States Constitution; (2) in denying the defendants' motions to suppress statements made by them while in custody; (3) in summarily denying a motion for rehearing on the motion to suppress, allegedly based on newly discovered

evidence not previously available to the defense; and (4) in denying the defense, at the hearing on the motion to suppress, the opportunity to examine the arresting officers as adverse or hostile witnesses, and in refusing to permit the defense to cross-examine the officers without being bound by their testimony. The defendants did not testify either at the trial or the hearing on the motion to suppress and, thus, the facts of this case were developed solely by the testimony of the arresting officers.

At approximately 5:00 a. m., on July 8, 1968, while on patrol, Officer Militell of the Itasca Police Department, observed a 1960 Oldsmobile pass his squad car several times. He noted that the rear license plate was hanging less than a foot from the pavement in violation of the state motor vehicle law, and he began to follow the Oldsmobile. He radioed to the other Itasca squad car that was in the area, and that car, driven by Officer Farina, also moved into position behind the Oldsmobile. After following the Oldsmobile for six or seven blocks, Officer Militell turned on his revolving red light and spotlight, and the three vehicles pulled over to the side of the road.

The defendant Ricketson and Officer Militell got out of their respective cars, and Ricketson, upon request for identification, produced a traffic ticket which listed his name and address. He also exhibited a registration certificate for the car, which indicated that he owned it. The officers did not mention the license plate violation.

Upon noting that Ricketson lived in Chicago, Officer Militell asked him what he was doing in the area at that hour of the morning, and Ricketson replied that he was visiting a friend (whom the officer did not know) in a nearby apartment. Officer Militell then observed a briefcase on the rear seat of the car with initials stamped thereon which did not correspond with those of Ricketson, and he asked him what it contained. Ricketson replied by asking the officer whether he wanted to look in-

side the case, and Militell said that he did. Both men reached for the briefcase and opened it together. It contained what appeared to be two, 9-millimeter lugers and a 35-millimeter camera, as well as a large pair of channel lock pliers, a pry bar, some silk scarves, two pairs of gloves, a small transistor radio, a letter opener, and a couple of small boxes and rolls of nylon tape.

Officer Farina called Militell's attention to some objects beneath a blanket on the rear floor of the defendants' car. Militell pulled back the blanket, which revealed a television set and a portable radio, and he asked Ricketson to whom these items belonged. Ricketson said that they were his. Militell then asked Ricketson if he could look in the trunk. Ricketson said that he could, went to the driver's side of the car and got the car keys; however, neither Ricketson nor Officer Farina could open the trunk with the keys.

At this point, Ricketson offered to give the officers the items in the car if they would let him and Artin, the passenger in the car, leave. Militell then arrested the defendants for the possession of burglary tools. At no time, while the car was stopped, does it appear that any mention was made to the defendants of the offense for which they were allegedly stopped.

The defendants were taken to the Itasca police station, and their car was taken to the police garage, where the trunk was later opened with the keys which were taken from Ricketson at the station. Various items were found in the trunk, which, along with the television set and radio, were later identified as stolen property, and were introduced into evidence against the defendants at the trial.

■ The defendants were initially stopped for an alleged violation of the state motor vehicle law. A search, incidental to an arrest, is authorized when it is reasonably necessary to protect the arresting officer from attack, to prevent escape, or to discover the fruits of a

crime. The People v. Machroli, 44 Ill2d 222, 224, 225, 254 NE2d 450 (1970). However, the extent of the search without a warrant, as an incident to a lawful arrest, must be limited, and persons must be made secure against unreasonable warrantless searches. The United States Supreme Court in Chimel v. California, 395 US 752, 23 L Ed2d 685 (1969), recently delineated the boundaries of a permissible "search incident to arrest," stating that the Fourth Amendment proscribes searches incidental to an arrest once they go beyond the area from which the person arrested might obtain weapons or evidentiary items. (395 US at 766, 23 L Ed2d at 695).

■ An arrest for a traffic violation does not, itself, warrant nor justify a search of the driver, and portions of his vehicle, unless surrounding circumstances reasonably indicate that the police may be dealing with more than an ordinary traffic violation. The People v. Reed, 37 Ill2d 91, 94, 227 NE2d 69 (1967); The People v. Thomas, 31 Ill2d 212, 213, 201 NE2d 413 (1964). Initially then, we must determine whether Ricketson consented to the search of the briefcase or whether there were factors to justify any search of the defendants and their vehicle.

■ Neither defendant testified, and the evidence stands unrefuted that Ricketson freely and voluntarily consented to the search of the briefcase. Thus, on the consensual basis, the search incident to the traffic arrest may be sustained. After discovering the guns and burglary tools in the briefcase, Officer Militell was then fully justified in making a further search of the car. The People v. Barbee, 35 Ill2d 407, 411, 412, 220 NE2d 401 (1966). Since we find that Ricketson consented to the search, we need not determine whether, under the circumstances of this case, there were sufficient factors to otherwise warrant the search of the defendants and the car in question.

■ Under the standard set forth by the United States Supreme Court in Chimel, supra, the search of the entire passenger section of the car was proper, as within the area of the defendant's reach, and the evidence there seized was properly admissible.

■ As to the evidence later seized from the trunk, it is apparent that under the standard of Chimel that the search was not valid as incidental to an arrest. We believe, however, that the subsequent search of the trunk was valid under another standard—that of probable cause—, and that the evidence there seized was properly admissible.

■ The court in Chimel noted in footnote 9, 23 L Ed 2d at 694:

> "Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' Carroll v. United States, 267 US 132, 153, 69 L Ed 543, 551, 45 S Ct 280, 39 ALR 790; See Brinegar v. United States, 338 US 160, 93 L Ed 1879, 69 S Ct 1302."

Recently, the Supreme Court, in Chambers v. Maroney (38 LW 4547, June 22, 1970), expanded upon Carroll v. United States, supra. In Chambers, the police had been advised of a robbery and had been given the general description of the car and persons involved. They saw a car answering this description, arrested the occupants, took the car to the police station where they thoroughly searched it, without a warrant, and found incriminating evidence. The Supreme Court held that the items seized from the car were properly admissible in evidence.

373

■ ■ The Supreme Court stated that under the facts known to the police, there was probable cause to search the car for guns and stolen money. The court referred to its decision in Carroll as recognizing that the Fourth Amendment prohibition against unreasonable searches and seizures requires different standards when applied to cars or other vehicles, as opposed to structures. It then quoted from Carroll to the effect that a search of an auto on probable cause proceeds on a theory wholly different from that justifying a search incident to an arrest, as follows:

> " 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' 267 US at 158–159."

■ The court stated Carroll to hold that a search warrant is unnecessary where there is probable cause to search an automobile stopped on a highway, as the car is movable, the occupants alerted, and the car's contents may never again be found if a warrant must be obtained. The court then held that if there is probable cause to search a car on a highway, the probable cause continues when possession of the car is taken by the police and the car is removed to the police station. If there is probable cause to search a car, the court found no constitutional difference between seizing and holding it before presenting the probable cause issue to a magistrate for the purpose of obtaining a search warrant, and permitting an immediate search of the car at the station without a warrant. (38 LW 4547.) Given probable cause, the court held either course to be reasonable under the Fourth Amendment.

Under the facts cited above, we believe that Chambers is controlling in this case as to the evidence seized in the trunk. There was probable cause to search for addi-

tional apparent stolen articles in the trunk as the officers reasonably assumed that they were dealing with more than a mere traffic violator, when, after the search incident to the arrest, they discovered a burglary kit and suspicious items on the back seat, and on the floor of the car. Under Chambers, this probable cause justified the search of the auto trunk without a warrant at a later time after the car had been removed to the police garage.

Thus, in Chambers, the United States Supreme Court, under the circumstances before it, approved a subsequent search of a motor vehicle much as our Supreme Court in its recent decisions has approved subsequent searches of trunks following an initial arrest for a motor vehicle violation. People v. Carter, supra, 500, 501; The People v. Jones, 38 Ill2d 427, 432, 433, 231 NE2d 580 (1967); The People v. Brown, 38 Ill2d 353, 356, 357, 231 NE2d 577 (1967). The rationale was somewhat different in these cases than that expressed in Chambers and, indeed, until the recent expression in Chambers, we might have believed that Chimel suggested that the search of the entire passenger section of the car was permissible, but in event of the arrest of its occupants and its removal to the police station, then no further search of the car could be made without a warrant. However, it is now clear that both the decisions of the United States Supreme Court and those of our Supreme Court uphold the validity of the search of the car trunk in this case.

The defendants contend that the incriminating statement made by Ricketson should have been suppressed because of the officers' failure to give the Miranda warnings. When the defendants were initially stopped and detained for the motor vehicle law violation, the restraint technically constituted an arrest. (Ill Rev Stats 1969, c 38, par 107–5(a).) The police officers then conducted their search and interrogated the defendants by virtue of the suspect circumstances heretofore related. After discovering the burglary tools in the briefcase and the

portable television set and radio under a blanket on the floor of the car, Officer Militell asked Ricketson if he could look in the trunk. Ricketson then went back to the driver's seat, got the keys and returned to the car trunk. After no one was successful in the attempt to open the trunk, Ricketson asked Officer Militell if they could make a deal. The officer asked what he had in mind, and Ricketson replied, "You take the stuff and we will go." At this point the defendants were verbally placed under arrest for possession of burglary tools, advised of their constitutional rights, searched, handcuffed and transported to the police station.

 For several reasons, we are of the opinion that the trial court was correct in not suppressing the foregoing statements. First, the statements of Ricketson were made at a time when the police officers were investigating the unusual combination of circumstances under consideration. We believe that the facts in this case represent an "on-the-scene" investigatory situation; and that Miranda is intended to guard against the abuses possible in custodial interrogation. In Miranda, the court made it clear that it did not intend to hamper the traditional function of police officers in investigating crime, and that "on-the-scene" questioning as to facts surrounding a crime or other general questioning of citizens in the initial fact-finding process were not intended to be affected by the decision. Miranda v. Arizona, 384 US 436, 477, 478, 16 L Ed2d 694 (1966); People v. Juve, 106 Ill App2d 421, 426, 245 NE2d 293 (1969); People v. Routt, 100 Ill App2d 388, 392, 241 NE2d 206 (1968); People v. Jendrzejak, 98 Ill App2d 313, 316, 240 NE2d 239 (1968); Annotation, "Custodial Interrogation," 31 ALR3d, pp 565–696.

 Secondly, section 4 of the foregoing annotation, at pages 580 and 581, indicates that certain courts have ruled that questions during the commission of a crime cannot be regarded as "custodial interrogation" requiring

the Miranda warnings. Noland v. United States, 380 F2d 1016 (1967, CA 10 Okla); People v. Stenchever, 249 Cal App2d 74, 57 Cal Rptr 14 (1967); State v. McKinley, 13 Ohio App2d 185, 234 NE2d 611 (1967). In applying this principle of law to the case at bar, we conclude that the defendant Ricketson was not under "custodial interrogation" relative to the crime of bribery when he made statements which constituted this offense; and that he was not entitled to counsel during the commission of this offense.

▮▮ Thirdly, while the police officers previously had questioned the defendants, the statements of Ricketson were not in response to any interrogation; they were volunteered after everyone had unsuccessfully tried to open the trunk. At the particular time, Ricketson was not being subjected to any questioning; apparently, he thought it prudent to then attempt to make a deal. In Miranda, at page 478, the court stated: "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." Thus, the statements of the defendant, Ricketson, are not afforded the protection of Miranda. In re Orr, 38 Ill2d 417, 423, 231 NE2d 424 (1967); People v. Langford, 123 Ill App 2d 437, 259 NE2d 79, 81 (1970); People v. Jendrzejak, supra; Annotation, supra, 31 ALR3d 565, sections 5 and 30, pp 581 and 680.

▮ Lastly, we do not believe that a motorist who has been stopped and arrested for a motor vehicle violation, and who is there questioned regarding other possible criminal offenses because of the then existing particular suspect circumstances, is subjected to "custodial interrogation" giving rise to the requirement of the Miranda warnings.

In view of the utility of the automobile in criminal activity, it is important that police officers be afforded the opportunity to make routine investigations and inquiries when, in the course of a motor vehicle violation

377

arrest, they come upon circumstances similar to those in this case. If the investigation then leads to probable cause that the person has committed a specific offense, the Miranda warnings thereafter must be given. Until such time, we do not believe that the detention of an individual for a motor vehicle violation prohibits questioning regarding another crime, without first giving the warnings set forth in Miranda. The questioning of a person in or about his motor vehicle on the street does not normally present the setting for intimidation against which Miranda was directed. Allen v. United States, 390 F2d 476, 479, supplemental opinion 404 F2d 1335, 1337 (DC 1968); Annotation, "Police Interrogation—Traffic Offense," 25 ALR3d 1076; Annotation, supra, 31 ALR3d 565, sections 9(b) and 30, pp 597 and 680.

We find no merit to the defendants' contention that there was newly discovered evidence which should have entitled them to a new hearing on their motions to suppress. Likewise, we do not agree that they were entitled to have the police officers called as the State's witnesses until such time as they appeared to the court to be hostile or adverse to the defendants in their testimony. The trial court did not abuse its discretion in this regard.

The defendant Artin also argues that there was not sufficient evidence to establish his guilt beyond a reasonable doubt. The property in the car was clearly established to have been stolen. The defendants were arrested near the place where the goods were stolen; the burglarized house contained markings on the doorknob similar to those which could have been made by the pliers found in the briefcase; and the possession of the aforesaid items of property within the car, was unexplained. Such possession was chargeable to Artin to the same extent as to Ricketson. The People v. Reynolds, 27 Ill2d 523, 526, 190 NE2d 301 (1963). There was ample evidence to sustain the verdict as to Artin. The People v.

Nicholls, 42 Ill2d 91, 95, 245 NE2d 771 (1969) ; People v. Ray, 80 Ill App2d 310, 316, 225 NE2d 467 (1967).

For the foregoing reasons, the judgment is affirmed.

Judgment affirmed.

MORAN and SEIDENFELD, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF PETITION FOR REHEARING.

 The defendant's petition for rehearing urges that the testimony of the police officers was incredulous. He suggests that the initials of "T.D." on the briefcase did not create a highly suspicious circumstance. We agree that this fact alone did not create such circumstance, but when coupled with the fact that upon interrogation, Ricketson stated that the briefcase was his, and with the further suspect circumstances set forth in the original opinion, then we believe that the police officers could view the totality of the circumstances as highly suspicious.

It is also argued by the defendant that the testimony of the police officer that Ricketson, upon inquiry concerning the ownership of the briefcase, replied that it was his and asked the officer if he would like to see its contents, is unworthy of belief. However, it may well have been Ricketson's reasoning that such bold course of conduct might dissuade the officer from proceeding further.

 Under the law, it is the province of the trier of fact to weigh the evidence and determine the credibility of witnesses. Where the evidence on an issue is conflicting but legally sufficient if the State's witnesses are believed, the question is for the trier of fact to determine. People v. Mundorf, 97 Ill App2d 130, 139, 239

379

NE2d 690 (1968); People v. Jennings, 84 Ill App2d 33, 39, 228 NE2d 566 (1967); People v. Ray, 80 Ill App2d 310, 316, 225 NE2d 467 (1967). This determination includes belief or disbelief of a witness' testimony, as well as resolving conflicts in the evidence. In the case at bar, the testimony of the police officers was not contradicted. The jury observed the State's witnesses, their candor or evasiveness, and their demeanor while testifying, and we will not interfere with its findings unless the evidence is so unsatisfactory as to raise a reasonable doubt as to the defendant's guilt. People v. Mundorf, supra, 139; People v. Castanza, 92 Ill App2d 419, 236 NE2d 251 (1968).

█ █ The decision of the trier of fact, when based on credible and substantial evidence which is sufficient to convict, is not subject to question on review merely because the jury chose to believe the firm testimony offered by the State. It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the credibility of witnesses for that of the trier of fact which heard the evidence and observed the demeanor of the witnesses; and we will not reverse a criminal conviction where the evidence is not so improbable as to raise a reasonable doubt of guilt. The People v. Novotny, 41 Ill2d 401, 411, 412, 244 NE2d 182 (1968).

It is our duty to set aside a conviction where the evidence is so unsatisfactory as to raise a reasonable doubt as to the defendant's guilt. The People v. Novotny, supra, 412; The People v. Reese, 34 Ill2d 77, 80, 213 NE2d 527 (1966). The jury resolved the issue of belief or disbelief of the police officers' testimony in favor of its credibility. We believe that the jury was in a better position than we are to properly determine the credibility of the State's witnesses; and that the evidence was not so unsatisfactory as to raise a reasonable doubt of the defendant's guilt.

For the foregoing reasons, we adhere to the opinion as originally adopted, and the petition for rehearing is denied.