DIVISION-KOSTNER CURRENCY EXCHANGE, INC. *et al.*, Plaintiffs-Appellants, *v.* C. AUSTIN MONTGOMERY, Director, Department of Financial Institutions, *et al.*, Defendants-Appellees.

(No. 59243;

First District (1st Division)—March 4, 1974.

EGAN, P. J., took no part.

Carey, Filter & White, of Chicago (Edward M. White, of counsel), for appellants.

Duffy and Jordan, of Chicago, for appellee Thillens, Inc.

William J. Scott, Attorney General, of Chicago (Bonny Sutker Barezky, Assistant Attorney General, of counsel), for appellee C. Austin Montgomery.

PER CURIAM:

Division-Kostner Currency Exchange, Inc., and Grand-North Currency Exchange, Inc. (plaintiffs), filed the instant complaint for administrative review of the decision of C. Austin Montgomery, Director of the Department of Financial Institutions (Director) awarding Thillens, Inc. (defendant), an ambulatory currency exchange license to perform on-location check-cashing services for the employees of an industrial plant located a short distance from the respective plaintiffs' established community currency exchanges. (Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*) The complaint alleged that the decision of the Director was contrary to law, unsupported by the evidence, and against the manifest weight of the evidence. The circuit court found that the Director's decision was not against the manifest weight of the evidence and denied the relief sought in the complaint. Plaintiffs appeal, contending that the trial court was in error in holding that the decision of the Director was not against the manifest weight of the evidence.

The record discloses that the defendant applied for a license to provide an ambulatory check-cashing service to the employees of the Pyle-National Company, 1334 North Kostner Avenue, Chicago, Illinois. The application was denied after initial investigation by the Director and the defendant requested a hearing on the matter, which was held on May 11, 1972, before a hearing officer of the Department of Financial Institutions. At that hearing, it was brought out that an earlier application had been filed by defendant to service Pyle-National a short while after the Brinks Corporation had ceased providing check-cashing services for Pyle-National's employees in September 1970, after about 25 years of providing such service, and that the earlier application had been denied after a hearing in October 1970.

At the May 1972 hearing on the instant application, evidence was adduced that the Pyle-National Company was located on the west side of Kostner Avenue, which was industrial in character; that the east side of Kostner Avenue was residential in character; and that the company employed about 700 employees, the majority of whom desired a check-cashing service to be located on the company grounds due to the inconvenience involved in cashing their paychecks during working hours on payday. The president of the company had received "considerable pressure" from his employees to secure a check-cashing service for the plant

premises, and the two industrial plants flanking the Pyle-National Company plant were serviced by ambulatory check-cashing operations. It was further brought out at the hearing that the plaintiffs' community currency exchanges were located 1 and 2 blocks from the Pyle-National plant, that both plaintiffs were located near public bus routes and were accessible from nearby ample automobile parking, and that about 10 percent of one plaintiff's gross business and about 5 percent of the other plaintiff's gross business were generated from Pyle-National employees. It was also brought out that both plaintiffs' businesses would suffer if the proposed license were granted, that about 80 per cent of the Pyle-National employees drove to work, that the majority of those employees lived in the neighborhood of the Pyle-National plant, and that one wishing bus service to and from the Pyle-National plant could board and alight the buses in the immediate proximity of the respective plaintiffs' locations.

The evidence adduced before the hearing officer, consisting of testimony and various exhibits, was summarized in the hearing officer's report and adopted as his findings of fact. After citing several relevant portions of the Community Currency Exchange Act in the report, the hearing officer arrived at the following conclusions:

"2.  　　＊　＊　＊

A. The evidence adduced in the hearing herein, establishes the need of the community for the services sought to be provided at the location specified.

B. The evidence adduced in the hearing herein establishes that the public convenience and advantage of the community in which the business is proposed to be conducted will be promoted by the issuance of the license herein sought.

3.  　　＊　＊　＊

A. The evidence adduced at the hearing herein establishes that the legislative policy as above set out will not be contravened by the issuance of the license herein sought, and that the needs of the community wherein the location license is sought, are such as to warrant the issuance of the license sought.

4.  　　＊　＊　＊

A. The evidence adduced at the hearing herein establishes that the public interest to promote and foster the community currency exchange business will not be contravened by the issuance of the license herein sought.

B. The evidence adduced at the hearing herein establishes that the public interest to assure the financial stability of the com-

munity currency exchange business and of Objector herein specifically, will not be contravened by the issuance of the license herein sought.

THEREFORE, for the reasons hereinabove set forth, the Hearing Officer concludes that the Applicant has met the statutory requirements for the issuance of the proposed location license, and recommends that the Director reverse, set aside, and hold for naught, his *ORDER OF DENIAL* of the application herein, dated January 31st, 1972, and that the location license herein sought be granted."

The findings of the hearing officer were approved by the Director on January 29, 1973, the ambulatory license applied for was issued, and this action for administrative review of the Director's decision followed.

Plaintiffs contend on appeal that the evidence adduced at the administrative hearing discloses that the convenience and advantage of the community would not be promoted by the instant license in that its issuance would result in a saturation of currency exchanges in the community; and that the issuance of the license applied for will jeopardize the financial stability of the plaintiffs' existing community currency exchanges. The appellees deny that the issuance of the license would result in a "saturated" condition of currency exchanges in the community, since the application is restricted to a weekly service at a single location, and they contend that the plaintiffs have failed to show that a conclusion contrary to the decision of the Director is "clearly evident" from the evidence adduced at the hearing before the administrative agency.

■■ The findings of an administrative agency are considered prima facie correct and will not be disturbed on review unless contrary to the manifest weight of the evidence. (*Marion Power Shovel Co. v. Department of Revenue*, 42 Ill.2d 13, 244 N.E.2d 598.) In order for an agency decision to be found against the manifest weight of the evidence, an opposite conclusion from that evidence must be "clearly evident." (*Legones v. License Appeal Com.*, 100 Ill.App.2d 394, 403, 241 N.E.2d 499.) However, where the facts are not in dispute, the legal effect of the evidence may create a matter of law for the court's determination. *J. H. Walters & Co. v. Department of Revenue*, 44 Ill.2d 95, 104, 254 N.E.2d 485.

The Illinois Community Currency Exchange Act regulates the issuance of both community currency exchange licenses and ambulatory currency exchange licenses. (Ill. Rev. Stat. 1971, ch. 16½, par. 30 *et seq.*) The Act draws a concrete distinction between a community currency exchange and an ambulatory currency exchange, the latter being defined in terms of an "on-location" service to the employees of a particular employer. (Ill. Rev. Stat. 1971, ch. 16½, par. 31.) This distinction is further deline-

ated by the terms of the Act since the Legislature "has found and declares" in section .01 that the community currency exchange business should be fostered and promoted whereas the nature of the ambulatory currency exchange business is such as to render it hazardous and dangerous to the public interest. Ill. Rev. Stat. 1971, ch. 16½, par. 30.

■■■ The concept that the ambulatory currency exchange business is not a favorite of the law has been carried into effect by the Illinois Supreme Court in *Thillens, Inc. v. Department of Financial Institutions,* 24 Ill.2d 110, 180 N.E.2d 494. Sections 4.1 and 4.3 of the Act, respectively, deal with the issuance of licenses for community currency exchanges and ambulatory currency exchanges. (Ill. Rev. Stat. 1971, ch. 16½, pars. 34.1, 34.3.) The Illinois Supreme Court in the *Thillens* case has found that the definition of "community" contained in section 4.1 of the Act is applicable to investigations of applications for licenses for ambulatory exchanges, and that the term "community" as used in the Act is not synonymous with the term "location" as applied to the ambulatory currency exchange situation. The test for the issuance of an ambulatory currency exchange is therefore whether it will promote the convenience and advantage of the community, not that of the location to be served. *Thillens, Inc. v. Department of Financial Institutions, supra; Edidin v. Montgomery,* 15 Ill.App.3d 909, 305 N.E.2d 316.

■■ The evidence adduced before the administrative hearing officer failed to disclose in what manner the proposed license would "promote the convenience and advantage of the community." It related primarily to the benefits and convenience which would accrue to the Pyle-National "location" and in fact demonstrated a somewhat depreciative effect upon the business of the existing community currency exchanges. The conclusions of the hearing officer and the decision of the Director are based upon those facts. It is "clearly evident" that no ambulatory license should have been granted under these circumstances since the test established by th Community Currency Exchange Act and by the foregoing *Thillens* case, that the community rather than the location be benefited by the issuance of such license, had not been met. The judgment of the circuit court upholding the decision of the Director was therefore in error.

For these reasons, the judgment of the circuit court of Cook County which sustained the decision of the Director of Financial Institutions is reversed and the cause remanded with directions to enter judgment granting the relief requested in the plaintiffs' complaint.

Judgment reversed and remanded.

Mr. PRESIDING JUSTICE EGAN took no part in the consideration or decision of this case.