TED PRYKA, Plaintiff-Appellant, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF SCHAUMBURG *et al.*, Defendants-Appellees.

First District (4th Division)    No. 78-143

Opinion filed December 7, 1978.

Stanley H. Jakala, of Berwyn, for appellant.

Jack M. Siegel, of Chicago, for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The sole issue in this case is whether the evidence before the Board of Fire and Police Commissioners was sufficient to support the finding that Officer Pryka had been guilty of sleeping while on duty. We hold that it was and affirm.

The two principal witnesses at the administrative hearing were Sergeant Specht and Officer Pryka. Sergent Specht was the "watchmaker" on the night shift on November 13, 1976, the night in question. The "watchmaker" assigns patrolmen to beats and areas, and is responsible for the supervision of the patrolmen in the village.

Sergeant Specht testified that at about 2 a.m. he was patrolling the area around Centrex Industrial Park in Schaumburg. Officer Pryka was assigned to that area. At about 2:07 a.m., he (Specht) turned east off Wright Boulevard onto a dirt road going into a vacant field about the size of a football field; the area had been used in the past by teenagers for drinking alcohol and he had made drug arrests there. When he entered the clearing about 200 feet off the roadway he saw a squad car, facing his car, with no lights on, parked at the east end of the clearing in the weeds which bordered it. Sergeant Specht brought his squad car to a stop 50 feet from the other squad car. His squad car was directly facing the other car and had its bright lights on. He could see no one nor any movement in the squad car. He then turned on his spotlight, a blinking aircraft landing light, and directed its beam into the parked automobile. He still observed no one in the vehicle. He moved the light around the area looking for the officer but found no one. He then drove up about 20 feet closer and again beamed the light through the windshield of the parked vehicle. Again he

saw no one. He sat there for a few minutes watching and then drove up alongside the parked car, so that the door on the driver's side of his squad car was next to the door on the driver's side of the parked car, the spotlight still shining into that car's interior. At first he still saw no one, but as he started to roll his car window down, he saw Officer Pryka's head come up to the point where his eyes were just above the steel part of the door. Pryka looked at Specht, popped straight up in his seat, pushed his hair back with his hand, and rubbed his eyes. Specht told him to get on the street and left to answer a burglary call which had come in at 2:08 a.m. He did not ask Pryka if he had been sleeping. A few seconds later, about the time Specht had cleared the field, Pryka, by police radio, was assigned a call. Pryka then came on the air and asked for a "Signal 1" (apparently a backup call) with Car 205 which was the car at the burglary in progress scene. The car did not answer. Instead, Specht answered, telling Pryka that if he had been with them he would have been aware that Car 205 was "at a burglary in progress."

About 3 that morning Specht saw Pryka at the police station. He advised Pryka that he was writing him up for sleeping on duty and advised him to write a letter giving his version of the incident. Pryka denied he had been sleeping. He said he had pulled over to tie his shoe and that he had bent down to tie his shoe without the overhead light on. Later he added that he had dropped a cup of hot chocolate and had been looking for it. He said that he had gone into the field to rest and drink the hot chocolate. After Pryka completed his report, he again told Specht he had not been sleeping. He did say that it had been a bad day and that he had very little rest that day.

On cross-examination Specht agreed that the spotlight could blind a person for a moment.

Police Officer Pryka testified that at about 2 a.m. on the day in question he purchased some hot chocolate and a roll. He then drove about three miles to park in a vacant lot. He chose this spot in compliance with a police directive requiring that policemen not take "coffee breaks" in the public view. The lot was the only area around there that was out of a residential area and far enough away from the public view. The offices in the industrial area work an evening shift.

He arrived at the lot at 2:05 a.m. and parked, leaving his motor running so he could answer any call quickly. He had been having trouble with his shoes so he untied them and swung his feet up on the seat, to get some circulation. He had put the cup containing hot chocolate on the dashboard and, as he was reaching around, he knocked it to the floor. He reached down to try to find the cup. As he was searching for it, he spotted some sort of a light. At the time he thought it was a factory light. He explained that the light from the neighboring factory shone into the lot; on

cross-examination, however, he admitted that the lights were directed down into the parking lot, and that he was not in that lot. He did not pay much attention to the light until he heard a car drive up alongside his. When he raised himself up, the spotlight from the other car shone in his eyes. He covered his eyes because of the intensity of the light; indeed, he was forced to remain home for two days because of the headaches caused by the spotlight shining in his eyes. Specht told him to get back on patrol. Pryka left the area after he received a radio call. He stated that while Car 205 was assigned to the burglary in progress, the backup car he requested was not so assigned. He denied that he told Specht that he had been tired. He also denied that he had been sleeping.

Pryka's letter, which he wrote in response to Specht's request, in general conformed with his testimony. He did not mention his problem with his shoes. However, he testified he mentioned this to Specht and, of course, Specht's testimony bears this out.

Officer Munzer testified that he called Officer Pryka at about 2:10 a.m., and that it could not have been later. Munzer asked him to cover a particular call, which Pryka did.[1]

After the hearing, the Board of Fire and Police Commissioners affirmed the five-day suspension imposed by the chief of police. On appeal to the circuit court of Cook County, Judge Dunne also affirmed the decision, stating that the issue was one of credibility and that he could not say that the decision of the Board was against the manifest weight of the evidence. We agree.

■■ The issue before the Commission was purely one of fact—whether the evidence indicated that Officer Pryka had been guilty of sleeping while on duty. A reviewing court cannot disturb the findings of fact made by an administrative agency unless they are manifestly against the weight of the evidence, regardless of how the court might have held had it been the trier of fact. (*Crepps v. Industrial Com.* (1949), 402 Ill. 606, 85 N.E.2d 5; 1 Ill. L. & Prac. *Administrative Law & Procedure* §52 (1953).) The court cannot reweigh the evidence but is limited to a determination of whether the final decision of the agency is just and reasonable in light of the evidence. (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) For an administrative decision to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly evident. (*Carlisi v. Liquor Control Com.* (1969), 116 Ill. App. 2d 350, 253 N.E.2d 560; *Division-Kostner Currency Exchange, Inc. v. Montgomery* (1974), 18 Ill.

---

[1] The record shows that much of the rest of Munzer's testimony was inaudible and could not be transcribed. In addition, nearly all of the dispatcher's testimony was inaudible and could not be transcribed. The appellant, however, has not suggested that the missing testimony was favorable, or that he is in some way prejudiced by its absence. Accordingly, we have simply limited our consideration to the evidence set forth in the opinion.

App. 3d 225, 309 N.E.2d 614; *Dante v. Police Board* (1976), 43 Ill. App. 3d 499, 357 N.E.2d 549, *appeal denied* (1977), 65 Ill. 2d 577.) Appellant appears to contend that these rules are inapplicable because the facts here were in dispute. But, of course, the contrary is true. If there is no dispute as to the facts, then the question is solely one of law, reviewable by the court. (*B.F. Gump Co. v. Industrial Com.* (1952), 411 Ill. 196, 103 N.E.2d 504; *American Stevedores Co. v. Industrial Com.* (1951), 408 Ill. 449, 97 N.E.2d 325; *Division-Kostner Currency Exchange, Inc. v. Montgomery* (1974), 18 Ill. App. 3d 225, 309 N.E.2d 614.) It is precisely when there is a conflict in the evidence or where the question is one of credibility that the agency's decision cannot be disturbed unless it is contrary to the manifest weight of the evidence. *Moriarty v. Police Board* (1972), 7 Ill. App. 3d 978, 289 N.E.2d 32; *Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 371 N.E.2d 1116.

In the instant case, the Board could have decided that Specht observed Pryka's vehicle for at least three minutes without observing anyone in it or any movement; that Pryka when he suddenly raised himself up, upon hearing his superior arrive, showed signs of having been asleep; that Pryka later admitted that he had been tired. The Board could also have decided that Pryka's testimony that he drove three miles to enjoy a cup of hot chocolate; that he was having trouble with his shoes which he untied and swung his feet up on the seat to get some circulation; that he searched for a cup of presumably spilled chocolate for three minutes without turning on the interior car light, and that he believed the piercing, blinking spotlight to be a light from the factory although those lights were directed into the parking lot instead of into the vacant lot to be too incredible to be believed. It is true that Pryka's testimony that he knocked over a cup of hot chocolate and searched for it was uncontradicted, but a trier of fact is not required to believe the testimony of an interested witness merely because it is uncontradicted. (*Davies v. Arthur Murray, Inc.* (1970), 124 Ill. App. 2d 141, 260 N.E.2d 240; *People v. Herron* (1970), 125 Ill. App. 2d 18, 260 N.E.2d 428, *appeal denied* (1970), 44 Ill. 2d 587; *People v. Ray* (1967), 80 Ill. App. 2d 310, 225 N.E.2d 467.) And the question of credibility is one for the agency, and not this court to decide. (*Dugan's Bistro, Inc. v. Daley* (1977), 56 Ill. App. 3d 463, 371 N.E.2d 1116.) We cannot say here that "an opposite conclusion [is] clearly evident." *Carlisi v. Liquor Control Com.* (1969), 116 Ill. App. 2d 350, 359, 253 N.E.2d 560, 565.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON, P. J., and LINN, J., concur.