VINCENT DANTE, Plaintiff-Appellee, *v.* THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (4th Division)   No. 61019

Opinion filed October 20, 1976.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Ann Acker, Assistant Corporation Counsel, of counsel), for appellants.

Jerome N. Zurla, of Chicago (John J. O'Toole, of counsel), for appellee.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Vincent Dante, a police sergeant, brought this action under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 263 *et seq.*) seeking reversal of the findings and decision of the Police Board of the City of Chicago separating him from the police department. The charges specified that plaintiff discussed with a judge a case which was on the trial call for that date; that he attempted to give the judge money for striking the case from his call; and that he failed to take appropriate action when two police officers involved in the stricken case failed to appear in court on the date the case was called for trial as required by General Order 70-20. The Board had found Dante guilty of violating two police department rules: Rule 2 which proscribes any action or conduct which impedes the department's efforts to achieve its goals or brings discredit upon the department; and Rule 6 which prohibits disobedience of an order or directive. The circuit court reversed the Board's decision and this appeal followed. The sole issue raised on review is whether the findings and decision of the Board were against the manifest weight of the evidence.

At the hearing conducted by a Police Board hearing officer, Judge Joseph Mioduski, an Associate Judge of the Circuit Court of Cook County for 6 years, testified that on October 31, 1973, he was assigned to Branch 28, the Monroe Street Police Station in Chicago, Illinois. After finishing the morning court call, he returned to his chambers and put his robe in his locker. Dante, who was assigned as the court sergeant at the station, was at his own locker located in the same chambers. He approached the judge and handed him an undetermined amount of money in bills which were folded over and quartered. The top bill was a $20. The judge asked, "What is this for?" Dante responded, "This is for the case you S.O.L.'d yesterday." The witness testified that he did not immediately know which case Dante was referring to, but then recalled a conversation they held the previous day, October 30, concerning a case that was coming up that morning. He returned the money to Dante and said, "Here, you take this money and you give it back to whoever gave it to you." Then he added, "Now, look. Somebody thinks a judge is getting money in a case and I don't like it. My reputation is on the line. Now you give it back. Don't you ever do that again."

The judge related the details of the October 30 conversation as follows. After the first part of the court call, a short intermission was taken during which time he and Dante were in his chambers. Dante attempted to inquire about his feelings on a case which was explained in hypothetical form as follows: A young man was out with his girl friend. He did not have the price of a motel room so he had sexual intercourse with her in the car. Subsequently, he was charged with rape. In response to this

hypothetical, the judge informed Dante that he did not make any promises up front; his cases were heard in the courtroom. According to the testimony, no names were mentioned and when the court call proceeded, he did not know what case the sergeant was discussing.

After the sergeant had attempted to give him the money, the judge went to see the administrative assistant to the presiding judge and reported the incident. The following week, the files were checked to find the case involved. The judge testified that he knew that no rape cases had been on his call; however, through the process of elimination, the possibilities were narrowed down to a case in which Paul Pavlik was charged with battery in circumstances involving sexual intercourse. The Pavlik case had been stricken on October 30. The judge also recalled that on the same day, a gentleman whom he recognized as previously having stepped up with a defendant, approached the bench and said thank you in Polish. The judge did not know this person and had no idea why he was expressing thanks.

On cross-examination, the judge stated that plaintiff was extremely helpful to him, that his performance was of top quality, and that this incident was the only gripe he had with the sergeant. He further opined that the police department would be losing a good employee if Dante were fired.

Plaintiff Dante testified that he had been employed as a police officer since 1952, and had been assigned to Branch 28 since January 4, 1973; that Judge Mioduski had frequently sought his advice on courtroom procedure and had complimented his work. The judge and he were on friendly terms at all times and Dante never experienced any opposition or polarization of his conduct toward him. He recalled a conversation in mid-October 1973 in which the judge had criticized the State's Attorney's office regarding the disposition of cases he thought should not have been reduced from rape to battery. Dante replied that the determination of whether a rape had actually taken place was made by the State's Attorney after evaluating the information afforded him and that all they could do was to carry forward. The judge then confided that he did not like to work in circumstances like these for he thought the court might be censored or castigated as a result.

Dante testified that he could not recall having any discussion with Judge Mioduski on October 30, 1973, or even being alone with him with the chambers' door closed. He denied ever recommending that the Pavlik case be stricken or taking money from anyone who was attempting to influence the case. Plaintiff stated that he had never met Paul Pavlik or his father-in-law, Mr. Weglarz, other than to hand the latter a subpoena, and that he did not hand the judge a roll of bills on October 31 for striking a case and did not discuss any rape cases on October 30 or any other date.

Plaintiff acknowledged the fact that the arresting officers in the Pavlik case failed to appear in court when the case was called, but explained that no one had called his attention to this fact, that he was not always aware of every case in which a police officer is not in court, and that he had no responsibility as court sergeant when a police officer was not in court. He testified that it was within his discretion under certain circumstances to cite a police officer for failing to appear in court.

Edward J. Weglarz, the father-in-law of Paul Pavlik, testified that he accompanied his son-in-law to court on October 30, 1973 and appeared with him in front of the bench when the case was called. He denied ever having offered a bribe to anyone regarding the case or having discussed a bribe with Dante, and testified that to his knowledge, his son-in-law never offered him a bribe. He further denied having stepped up to the bench and said thank you in Polish. On cross-examination, the witness stated that he was Polish and that he knew and understood the Polish words "dzien kuje" which means thank you in Polish.

The arresting officers in the Pavlik case testified they did not appear in court on October 30 because the arrest had been turned over to the investigating officers and it was their understanding that they were not needed in court. They acknowledged that it was normal procedure of the police department through the court sergeant to notify officers who do not appear in court; however, each stated that there were occasions when he had not appeared in court but was not notified by a court sergeant. The commanding officer of the court section of the police department testified that the court sergeant has discretion in whether to cite a police officer. However, on cross-examination he noted that in a case involving an original complaint of rape which is reduced to battery and an investigation is made, the investigators would have to appear in court and if they did not, it would be the function of the court sergeant to cite them for failure to appear. A failure to cite would be a violation of department rules.

Numerous character witnesses, including two judges, a police captain, and a police lieutenant, testified on plaintiff's behalf.

■■■ It is not the duty of the court to weigh the evidence before the Board, but rather its duty is to ascertain if the findings and decision of the administrative agency are against the manifest weight of the evidence. (*Schnulle v. Board of Fire & Police Commissioners* (1974), 16 Ill. App. 3d 812, 818, 306 N.E.2d 906.) The reviewing court determines only whether there is any evidence which fairly tends to support the Board's determination and its decision should not be reversed unless the opposite conclusion is clearly evident. (*Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, 868, 278 N.E.2d 212.) The evidence concerning the events which transpired on October 30 and 31

was in direct conflict and the resolution of the case depended upon a determination of the credibility of the witnesses. However, the mere existence of conflicting testimony is not a sufficient basis to invalidate an administrative agency's decision as being against the manifest weight of the evidence. (*Ceja v. State Police Merit Board* (1973), 12 Ill. App. 3d 52, 58, 298 N.E.2d 378.) Judge Mioduski was a highly credible witness whose unimpeached testimony was contradicted only by plaintiff's denials. It was for the Board, not the circuit court, to judge the credibility of the witnesses (*Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 401, 342 N.E.2d 298), and our review of the record does not indicate that an opposite conclusion is clearly evident, but instead indicates that there was ample evidence to support the decision. We therefore hold that the circuit court erred in reversing the findings and decision of the Board.

■■ Plaintiff contends that a different result should have been reached on the alleged violation of Rule 6 because the testimony established that a court sergeant is not always required to cite an officer who does not appear in court. We are unpersuaded by this since further testimony indicated that in this circumstance a citation should have been issued. In any event, a single valid finding of "cause" is sufficient to constitute the basis for an order of discharge (*Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 398, 342 N.E.2d 298), and the finding of a violation of Rule 2 stated a valid cause for discharge.

■■ We also find no merit to plaintiff's contention that the penalty imposed was too harsh. When some substantial shortcoming renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and the law and public opinion recognize it as a justification for his no longer holding the position, the person may be discharged. (*Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, 869, 278 N.E.2d 212.) There can be little doubt that the allegations against plaintiff were sufficiently serious to merit the punishment meted out by the Board.

For the foregoing reasons, the judgment of the circuit court of Cook County reversing the findings and decision of the Police Board of the City of Chicago is reversed.

Reversed.

DIERINGER and BURMAN, JJ., concur.