ARTHUR MIHALOPOULOS, Plaintiff-Appellee, *v.* THE BOARD OF FIRE & POLICE COMMISSIONERS OF THE CITY OF EAST MOLINE *et al.*, Defendants-Appellants.

Third District   No. 77-442

Opinion filed June 7, 1978.

Robert J. DiLeonardi, of Des Plaines, for appellants.

Stewart R. Winstein, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Defendants Board of Fire & Police Commissioners of the City of East Moline *et al.* appeal from an order of the Circuit Court of Rock Island County reversing the order of the Board of discharge of plaintiff, Arthur Mihalopoulos, a captain of the police department of the City of East Moline.

Plaintiff Arthur Mihalopoulos, a captain of the police department of the City of East Moline, was discharged following a hearing before the Board of Fire & Police Commissioners of the City of East Moline (Board), pursuant to section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—17). Plaintiff filed a complaint for administrative review in the Circuit Court of Rock Island County against

defendants, the Board, the individual members of the Board, the City of East Moline, and the mayor of the City of East Moline. The circuit court, finding that certain factual findings made by the Board were against the manifest weight of the evidence and that the charges against plaintiff were insufficient cause to warrant discharge, reversed the Board's order of discharge. Defendants appeal, arguing that (1) the findings of the Board were not contrary to the manifest weight of the evidence, and (2) the acts committed by plaintiff do constitute sufficient cause for discharge.

The record establishes that on November 10, 1975, the mayor of the City of East Moline filed a complaint before the Board pursuant to section 10—2.1—17 of the Illinois Municipal Code against plaintiff Arthur Mihalopoulos, a captain in the East Moline Police Department. Count I of the complaint alleged that plaintiff had on several occasions given false information to agents of the Illinois Bureau of Investigation while those agents were conducting an official investigation. Count II alleged that plaintiff had wrongfully caused a delay in the reporting of an automobile accident in which plaintiff was involved, so as to prevent plaintiff's arrest for driving under the influence of intoxicating liquor. Count III of the complaint charged that plaintiff disobeyed a direct order of the East Moline Chief of Police, directing that plaintiff cease working on the plain clothes detail at the East Moline Downs race track. Count IV alleged that plaintiff engaged on a course of conduct constituting gross neglect of his duties as an officer in that (a) plaintiff was under the influence of alcohol while on duty on one occasion, after being warned against such conduct, (b) on several occasions plaintiff absented himself from work and caused the falsification of roll call records to conceal his failure to work a 40-hour week, and (c) on two occasions plaintiff left his post of duty to attend to personal matters. The complaint further alleged that the acts charged in each count rendered the continuance of plaintiff's employment detrimental to the discipline and efficiency of the public service.

Hearings on the complaint commenced before the Board on January 12, 1976, and concluded March 3, 1976. With respect to count I of the complaint, the Board heard testimony from Illinois Bureau of Investigation Special Agent George Economos regarding several conversations Economos and other IBI agents had with plaintiff in the course of their investigation of the 10th race held at East Moline Downs on May 20, 1975. Special Agent Economos testified that he first talked to plaintiff with respect to the investigation on May 21, 1975, and that plaintiff then stated that he (plaintiff) had purchased 96 ten-dollar "perfecta tickets" for the 10th race at East Moline Downs on May 20, 1975; that he won a total of $2,800 with the purchased tickets; that he did not purchase the tickets for another person or persons; that he had borrowed $1,000 from a local bank for the purpose of purchasing the

tickets; that he had the loan papers to prove the existence of the loan; that he purchased the tickets using combinations listed on a paper napkin he had earlier obtained from one of two unidentified male white persons who were presented to him (plaintiff) by East Moline Downs Security Chief Raymond Carey; that he gave the napkin and losing perfecta tickets to Carey after the race; that the napkin in question belonged to him (plaintiff); that he was not going to be a "patsy" for Carey or anyone else; and that he (plaintiff) would make no further statements to Economos regarding the matter unless he was first subpoenaed.

Economos testified that on May 23, 1975, he again talked with plaintiff, and that plaintiff then stated to Economos that on May 20, 1975, Carey had asked plaintiff to place bets for two unidentified male persons; that one of the persons gave plaintiff a napkin upon which were printed the combinations on which plaintiff was to place bets; that the person also gave plaintiff ten $100 bills with which to place the bets, that plaintiff purchased the tickets and returned them to Carey; that following the race, Carey gave plaintiff the eight winning tickets, that plaintiff (following Carey's instructions) then collected the $2,800 in winnings and delivered the money to Carey "outside—not in the security office"; and that plaintiff could not identify the persons who had been presented to him by Carey because he (plaintiff) was "schnockered" (half-drunk) at the time he first saw them. Economos further testified that he questioned plaintiff again on May 24 and 26, 1975, and that plaintiff on those occasions gave statements which were generally consistent with plaintiff's statement of May 23, 1975. Economos also testified that on May 26, 1975, plaintiff stated that on May 20, 1975, after plaintiff had given the $2,800 to Carey in the parking lot of East Moline Downs, Carey had told plaintiff not to tell anyone about the transaction which had taken place, and that on May 20, 1975, plaintiff had been drinking beer but was not really drunk at the time Carey presented the two persons to plaintiff.

Plaintiff testified at the hearing before the Board, and indicated that he had, on May 20, 1975, purchased 96 perfecta tickets for two persons at the request of Carey and, after cashing the winning tickets, turned the winnings over to Carey. Plaintiff acknowledged that he had at first informed Agent Economos that he (plaintiff) had purchased the tickets on his own behalf, with the proceeds of a loan. Plaintiff further testified that he subsequently told Economos that the tickets had been purchased by plaintiff at the request of Carey on behalf of two persons presented to plaintiff by Carey.

With respect to count IV of the complaint, the Board heard the testimony of three witnesses (two police officers and a police civilian employee) who described plaintiff's physical appearance, breath and behavior on August 7, 1975, and who testified that in their opinion

plaintiff was under the influence of intoxicating liquor while at the station on duty at that time. Plaintiff testified that he was not intoxicated while on duty. The Board also heard testimony that plaintiff had on several occasions been late in reporting for work, left work early, absented himself from work for significant periods of time, and caused the falsification of roll call records to conceal his failure to work a 40-hour work week. Further testimony indicated that plaintiff had on one occasion visited the East Moline Downs Race Track while on duty and caused a bet to be placed for himself, and that on June 14, 1975, plaintiff while on duty had an employee of the East Moline Police Department pick up a lawn mower and deliver it to plaintiff's residence, where plaintiff proceeded to mow his lawn.

Following presentation of the evidence, the Board found that the allegations of counts I and IV of the complaint were sustained by the evidence and that the allegations of counts II and III were not proven by a preponderance of the evidence. The Board found that the acts proved: tended to bring the East Moline Police Department into disrepute; were conduct unbecoming an officer; constituted substantial shortcomings which rendered the continuance of plaintiff's employment detrimental to the discipline and efficiency of the public service; and were acts which the law and public opinion recognized as cause for plaintiff to no longer occupy his position with the East Moline Police Department. Accordingly, the Board, on April 14, 1976, ordered that plaintiff be discharged and removed from his position as captain of the police department of the City of East Moline.

On May 17, 1976, plaintiff filed his complaint in the Circuit Court of Rock Island County for administrative review of the Board's determination pursuant to the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*). In an opinion filed July 1, 1977, the circuit court found that, with respect to count I of the complaint, the inconsistent statements given by plaintiff were so unrelated to his services as a police officer as not to be sufficient cause for plaintiff's discharge, and, with respect to count IV, the Board's determination that plaintiff had been intoxicated while on duty was against the manifest weight of the evidence and the remaining acts within count IV were too trivial to constitute cause for discharge. By order entered July 11, 1977, the circuit court reversed the Board's order of discharge.

■■ Defendants first argue on appeal that the findings made by the Board were not contrary to the manifest weight of the evidence. With respect to the weight to be accorded the findings of a police board, the Illinois Appellate Court for the First District stated in *Lieberman v. Rochford* (1st Dist. 1976), 43 Ill. App. 3d 1001, 1003, 358 N.E.2d 287:

"While the findings and conclusions of an administrative agency

are to be held *prima facie* true and correct (Ill. Rev. Stat. 1973, ch. 110, par. 274), our supreme court has construed this provision to limit the function of the reviewing court to ascertaining whether the findings and decisions of the administrative agency are against the manifest weight of the evidence. (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 713.) Moreover, a reviewing court will not reweigh the evidence and determine the credibility of the witnesses. (*Moriarty v. Police Board* (1972), 7 Ill. App. 3d 978, 289 N.E.2d 32.) A reviewing court may, however, reverse an administrative body's findings where the findings of that body are against the manifest weight of the evidence. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371.) An examination will thus be made on review to determine whether enough evidence exists on record to support the findings of violation. *Daniels v. Police Board* (1976), 37 Ill. App. 3d 1018, 349 N.E.2d 504."

(Accord *Kirsch v. Rochford* (1st Dist. 1977), 55 Ill. App. 3d 1042, 371 N.E.2d 899.) As further stated by the Illinois Supreme Court in *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471-72, 269 N.E.2d 713, *cert. denied*, 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229:

"The courts will not reweigh the evidence, but are limited to a determination whether the final decision of the administrative agency is just and reasonable in light of the evidence presented. (*Fantozzi v. Board of Fire and Police Com'rs of Villa Park*, 35 Ill. App. 2d 248, affirmed 27 Ill. 2d 357.) Neither the appellate court nor the trial court may substitute its judgment for that of the administrative agency. (See *e.g., DeGrazio v. Civil Service Com. of Chicago*, 31 Ill. 2d 482; *Olsen v. Civil Service Com. of Chicago*, 28 Ill. App. 2d 146; *Miglieri v. Lee*, 16 Ill. App. 2d 545.)"

In the instant case the Board heard testimony from Illinois Bureau of Investigation Special Agent Economos that plaintiff gave inconsistent statements to the agent with respect to an official investigation. Plaintiff's testimony before the Board did not contradict Economos' testimony, but rather corroborated that testimony. With regard to the finding that plaintiff was intoxicated while on duty on August 7, 1975, three witnesses (two police officers and a police civilian employee) testified to plaintiff's appearance, behavior, speech and breath odor, and gave their opinions that plaintiff was under the influence of alcohol on that occasion. Although plaintiff testified before the Board that he was not intoxicated while on duty on that date, there is sufficient evidence in the record to support the Board's finding of plaintiff's intoxication. The Board also heard testimony from a police officer indicating that the officer had, pursuant to plaintiff's instruction, falsified (at plaintiff's request) plaintiff's work records on

about two dozen occasions to show plaintiff present at the station at times when plaintiff was in fact absent from the station. While plaintiff denied that he had caused falsification of his time records, we cannot say that the Boards' contrary conclusion was against the manifest weight of the evidence. Plaintiff did not deny, in his testimony before the Board, that he left his post on two occasions to conduct personal business, but only attempted to explain why he did so. After a review of the record, we conclude that the Board's factual findings are supported by sufficient evidence in the record and are not contrary to the manifest weight of the evidence.

■■ Defendants next argue that the acts which the Board found were committed by plaintiff do constitute cause for plaintiff's discharge. It is noted that section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—17) provides in part that:

"* * * no officer or member of the * * ■ police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense."

As stated in *Westby v. Board of Fire & Police Commissioners* (2d Dist. 1977), 48 Ill. App. 3d 388, 393-94, 362 N.E.2d 1098:

"The 'cause' for dismissal referred to in section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—17) has been held to mean

'some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place.' *(Fantozzi v. Fire and Police Commissrs.*, 27 Ill. 2d 357, 360 (1963).)

(See also *Nation v. Board of Fire & Police Commissioners*, 40 Ill. App. 3d 384, 386-87 (1976).) A police board is accorded considerable discretion in determining what constitutes cause for discharge; and its decision as to the existence of cause will not be reversed 'so long as its findings are related to the requirements of the service and not so trivial as to be arbitrary or unreasonable.' *Petraitis v. Board of Fire & Police Commissioners*, 31 Ill. App. 3d 864, 868 (1975)."

Accord, *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 370 N.E.2d 511; *Humbles v. Board of Fire & Police Commissioners* (2d Dist. 1977), 53 Ill. App. 3d 731, 368 N.E.2d 1049.

■■ The evidence before the Board in the instant case indicated that plaintiff gave false statements to an IBI agent while that agent was conducting an official investigation. Such conduct, especially on the part

of a captain of a police department, certainly tends to bring the department into disrepute, even though the conduct occurs while the officer is not on duty. The Board could properly determine that the office of police captain requires an individual to be forthright, and certainly to refrain from being misleading, when questioned regarding an official investigation.

Plaintiff has argued that the Board's order of discharge was improper because there existed no written rules or regulations governing the internal operation of the East Moline Police Department or the conduct of its members. It is noted, however, that the Board's power to discharge an officer for cause stems directly from section 10—2.1—17 of the Illinois Municipal Code, and does not always depend on the existence of written regulations of departmental conduct. Thus, in *DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 202 N.E.2d 522, an officer's discharge was held proper based on an amended charge (not grounded on a written regulation) that the officer had brought disgrace, disrepute and ridicule upon the police department, even though the written regulation which the officer was charged with violating was held invalid. The absence of written regulations is, nonetheless, a favor to be considered, along with the seriousness of the officer's conduct, in determining whether the Board acted arbitrarily or unreasonably in exercising its discretion to discharge an officer. *Smith v. O'Keefe* (5th Dist. 1973), 9 Ill. App. 3d 814, 293 N.E.2d 142.

■■ On the basis of the record, we cannot agree with the conclusion of the trial court that plaintiff's conduct in making the inconsistent statements to the I.B.I. investigator was so unrelated to his service as a police officer that it should not be considered in determining whether there was sufficient "cause" to warrant discharge. (*DeGrazio v. Civil Service* (1964), 31 Ill. 2d 482, 202 N.E.2d 522.) It is apparent from the record that plaintiff's inconsistent statements to the I.B.I. agent reveal conduct inconsistent with reasonable expectations of the standards of conduct to be adhered to by a police captain. The fact that plaintiff appeared for work once while intoxicated, participated in falsifying time records, and performed personal errands while on duty, in themselves, would not separately, be sufficient to constitute a substantial basis for discharge. When viewed, however, in the light of the inconsistent statements made to the I.B.I. agent, the conclusion of the Board, that such activities, viewed together, had a substantially detrimental impact on the discipline and efficiency of the police department, appears reasonable. As stated in *DeGrazio v. Civil Service* (1964), 31 Ill. 2d 482, 489, 202 N.E.2d 522:

> "On administrative review the court does not weigh the evidence and its function is limited to ascertaining if the findings

and decision of the administrative agency are against the manifest weight of the evidence. In this type of proceeding involving the removal of a police officer, it is the function of the court to decide if the charges preferred against the officer are not so trivial as to be unreasonable or arbitrary, if the Commission acted on evidence that fairly tended to sustain the charges, and if its decision is related to the requirements of the service. The court cannot substitute its judgment for that of the Commission. (*Etscheid v. Police Board of Chicago*, 47 Ill. App. 2d 124, 132.)"

Under the facts and circumstances in the case, it is not a matter of determining what our conclusions would have been in this cause. On the basis of the record, we conclude that the Board did not abuse its discretion in determining that plaintiff's acts constituted "cause" for discharge.

Accordingly, the judgment of the Circuit Court of Rock Island County is reversed and the order of discharge of the Board of Fire and Police Commissioners of the City of East Moline as to plaintiff is reinstated.

Judgment of the circuit court reversed and order of the police board is reinstated.

STOUDER and SCOTT, JJ., concur.