MICKEY BROMUND, Plaintiff-Appellant, *v.* BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF SCHAUMBERG *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-144

Opinion filed May 22, 1979.

Stanley H. Jakala, of Berwyn, for appellant.

Jack M. Siegel, of Chicago, for appellees.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Mickey Bromund, appeals from an order of the circuit court of Cook County, which affirmed a decision of the Board of Fire and Police Commissioners of the Village of Schaumberg (hereinafter Board) suspending plaintiff from his position as policeman for a period of 15 days. The sole issue presented for review is whether the decision of the Board is contrary to the manifest weight of the evidence.

We affirm.

Plaintiff, a police officer for the Village of Schaumberg, was suspended for five days after his supervisors learned that plaintiff received $100, allegedly as restitution, from a person plaintiff had arrested. Plaintiff was found to have violated two rules of the police department—Rule 37, regarding conduct which brings discredit upon the department, and Rule 43, regarding acceptance of money as a gift, fee or reward. Plaintiff appealed to the Board to reverse the suspension. The following evidence was adduced at a hearing before the Board.

Plaintiff testified that on September 7, 1976, he observed an automobile travelling at a high rate of speed and committing several other traffic violations. Plaintiff attempted to stop the vehicle, but the driver would not stop. When the vehicle parked in a driveway, plaintiff approached the driver, Carl Gallo, and asked to see his driver's license. Gallo pushed plaintiff against the automobile and then as plaintiff attempted to handcuff Gallo, plaintiff fell and hit his left shoulder on the fender of the automobile. Plaintiff then arrested Gallo, took him to the police station and charged him with battery, resisting arrest, eluding, speeding and reckless driving. A companion of Gallo was arrested also and charged with resisting arrest. Plaintiff then went to Northwest Community Hospital where a doctor examined his shoulder. The doctor gave plaintiff a written excuse from work for three days. The doctor bills were paid by the Village. Plaintiff testified that he was actually excused from work for two days, September 8 and 9, since on September 10 he began his vacation, which ran to September 21, 1976. Plaintiff wore a sling

on his arm for four days but had pain for about three weeks. He returned to work on September 22, 1976. Plaintiff testified that in September 1976 he had been employed part time as an undercover security agent for Woodfield Mall. Plaintiff normally worked 8 to 12 hours per week earning $4 to $4.50 per hour. After the incident with Gallo, plaintiff could not work as security guard for three weeks because his arm was injured. He returned to the part-time work on September 29, 1976.

Plaintiff testified that on September 22, 1976, he attended a pretrial conference concerning the Gallo case. Assistant State's Attorney Farmer, together with Gallo's attorney and the co-defendant's attorney, were all present at the conference. Prior to the conference, plaintiff told Farmer that he had lost about $100 in wages from his part-time work, and Farmer told plaintiff he would receive restitution. During the pretrial conference the attorneys discussed a proposed disposition of supervision and a fine. Farmer asked plaintiff for his opinion, and plaintiff replied that he felt it was a fair disposition. The question of restitution was not discussed at the conference. The attorneys then appeared before the judge, and all the charges except eluding were dismissed, and Gallo received one-year supervision, a $50 fine and $5 court costs. The question of restitution was not discussed before the judge. After the court approved the disposition, Gallo's attorney gave plaintiff $100, and plaintiff informed his court sergeant of the disposition, including the restitution. Plaintiff did not state in his case report that he had received $100 as restitution.

Plaintiff testified that he was not aware of a written memo or department rule requiring the presence of a court sergeant at pretrial conferences. Plaintiff was aware of a provision in the training manual stating that presence of a court sergeant is preferable, but plaintiff did not interpret this provision to require mandatory presence of the court sergeant, especially since more than one conference was usually held at the same time. Plaintiff followed the recommendation of the State's Attorney in the Gallo case.

Carl Gallo testified that he was arrested on September 6, 1976, by plaintiff and charged with battery, resisting a police officer, fleeing, reckless driving and speeding. On September 22, 1976, he was scheduled to appear in court regarding the charges. Prior to appearing in court Gallo was advised by his attorney that a pretrial conference had been held with the State's Attorney, and that if Gallo paid $100 to plaintiff, all the charges would be dismissed. Gallo was told that the $100 was not a bribe but was to pay for plaintiff's loss of work. Gallo's attorney advised him to pay the $100 since he could be fined up to $1000 and a year in jail if he went before the judge. Gallo then appeared before the judge, and the State's Attorney explained that all the charges, except eluding, would be dismissed. Gallo was fined $50 plus $5 for costs for the eluding charge and placed under court supervision for one year. The court was not advised of

the $100 paid to plaintiff. Gallo's attorney paid plaintiff $100 in the hallway outside the courtroom. Gallo testified that he did not strike plaintiff on September 6, 1976, and that he felt he was buying his way out of the charges.

Assistant State's Attorney Joseph Farmer testified that he was assigned to prosecute the Gallo case. Farmer spoke to plaintiff before the case was called and was informed that plaintiff had lost three days work as a result of an altercation at the time of Gallo's arrest. Plaintiff did not state the nature of the work or hours but stated he lost approximately $100 in wages. At a pretrial conference, Farmer and Gallo's attorney agreed that certain charges would be dismissed, that Gallo would enter a technical plea of not guilty to resisting arrest and pay plaintiff $100 for loss of wages, and that Farmer would recommend supervision for one year and a monetary fine. The court was advised of the disposition, except for the $100 paid to plaintiff. Farmer testified that the court sergeant was not present at the conference and was not advised of the proposed disposition. Farmer testified that in September 1976 the State's Attorney's office did not have any stated policy concerning restitution to police officers, but that on December 23, 1976, a bulletin was issued by the district supervisor that restitution should be given only for tangible items that are provable. Farmer testified further that under a statute which became effective August 2, 1976 (Ill. Rev. Stat., 1976 Supp., ch. 38, par. 1005—6—3), it was fair to say that any restitution should be approved by the court. Farmer stated that he did not inform the court in the Gallo case because he "probably" wanted to expedite the matter or because of his own neglect. Plaintiff was paid the money in the courtroom after the matter was disposed of, but Farmer did not remember whether the judge was present.

Royal Desmond testified that he was a police officer for the Village of Schaumberg for 4½ years and he also worked as a security agent at Woodfield Mall. Desmond was responsible for scheduling hours for the part-time employees. During the first week of September 1976, plaintiff notified Desmond that he would not be able to work because he had been injured on a police call; therefore Desmond did not schedule plaintiff to work for two to four weeks. Desmond testified that he was not aware of any rule in existence in September 1976 which required the presence of a court sergeant at pretrial conferences. Desmond had received restitution in one instance for a pair of torn trousers and a broken badge. The court had been informed of the restitution.

Robert Loftus testified that he was the director of security for Woodfield Mall in 1976. Plaintiff's employment records for September 1976 indicated that plaintiff called on September 7, 1976, to say that he would not be in and that plaintiff did not report again until September 29, 1976.

Lenore Bromund, plaintiff's wife, testified that plaintiff came home from work on September 8, 1976, with his arm in a sling. Plaintiff lost a couple of days from work as a police officer and was off for three weeks from his part-time work due to his injury.

Police Lieutenant Alvin Herzfeld testified that in September 1976 plaintiff was under his command. Lieutenant Herzfeld saw plaintiff on September 12, 1976, at which time he learned of plaintiff's injury. Lieutenant Herzfeld first learned of the restitution paid to plaintiff on October 13, 1976, when he was told by the police chief that the department may have been involved in a bribe. The chief instructed Lieutenant Herzfeld to investigate the matter. Lieutenant Herzfeld spoke to Gallo, and Gallo said he thought the payment was a bribe. On November 1, 1976, Lieutenant Herzfeld had a conversation with plaintiff in which plaintiff stated that he lost time at his part-time job and that he received $100 as restitution to cover the inconvenience of the injury and his lost time on his vacation and part-time job. Lieutenant Herzfeld testified that the policy of the department in September 1976 concerning restitution was that an officer could receive restitution for loss of tangible items only and only with approval of the court sergeant and the office of the chief of police. This policy had been in effect since 1967. It was Lieutenant Herzfeld's opinion that plaintiff's acceptance of the $100 diluted the effectiveness of the criminal court system and cast a bad reflection on the police.

Sergeant Daniel Coursey testified that he served as court sergeant on September 22, 1976. Plaintiff did not advise him that a pretrial conference was to be held and did not advise him of the proposed disposition prior to appearing before the court. After the case was heard, Sergeant Coursey approached plaintiff, and plaintiff informed him of the disposition, including the restitution. Plaintiff did not state the nature or amount of the restitution. Sergeant Coursey did not inform Lieutenant Herzfeld about the restitution because he assumed it had been approved by the court. Sergeant Coursey testified that a court sergeant was to attend pretrial conferences if possible, but that it was not unusual for a pretrial conference to be conducted without a court sergeant since more than one conference is held at the same time. Sergeant Coursey received a one-day suspension for his role in the Gallo matter.

Officers Ted Pryka, Robert Stachnick, John Mueller, Howard Winkelhake and Robert Mohr, Jr., testified that they were not aware of any department rule requiring a court sergeant to be present at pretrial conferences until a memo had recently been distributed. Officer Mueller had received restitution of $28 for a torn jacket on one occasion, and the court had approved such restitution.

Officer William Bartkavich, Edmund Doone, James Kuzel, William

King, Terry McGrau, James Herman and Roger Peter testified that the policy of the department was that all officers were to notify the court sergeant prior to participating in a pretrial conference. Officers Bartkavich, Kuzel and Peter testified that it was department policy to advise the court sergeant of the proposed disposition before appearing in court. Officers Doone, King and Herman testified that an officer was to advise the court sergeant of the proposed disposition if there were any unusual circumstances involved in the case. Officer King considered restitution to be an unusual circumstance. Officer Glen Rzeppa testified that the police officers' training guide states that a court sergeant should be present at pretrial conferences.

Martin J. Conroy testified that he had been police chief for the Village of Schaumberg since 1960. Conroy signed the order suspending plaintiff for five days because he believed plaintiff's acceptance of $100 violated the general policy of the department concerning participation in pretrial conferences, a particular department memo dated May 24, 1972, department Rule 37 regarding a police officer bringing discredit upon the department and Rule 43 regarding acceptance of money by an officer from a person who has been arrested. Chief Conroy felt that the Gallo incident brought adverse publicity and discredit against the department. Chief Conroy testified that he first learned of the Gallo incident on October 12, 1976, when he had a conversation with the fire chief. The fire chief told Conroy that one of his firemen (Gallo) got a break in his case, that all the charges were dropped except for one, and that he received supervision, a $50 fine and "$100 to the copper." After this conversation, Conroy told the division commander to investigate the matter.

Based on the foregoing evidence, the Board found that plaintiff failed to prove he lost $100 in wages, that the money accepted by plaintiff was not restitution for lost wages, that plaintiff failed to inform the court of the restitution and that plaintiff's actions violated department Rules 37 and 43. The Board found, however, that plaintiff's actions were not contrary to any established general policy of the department regarding pretrial conferences. The Board upheld the five-day suspension and suspended plaintiff for an additional 10 days.

Plaintiff brought an action under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) and the circuit court affirmed the Board's decision.

■█ It is well established that a decision of an administrative agency should not be reversed unless it is contrary to the manifest weight of the evidence. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371; *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) Section 11 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 274)

provides that the agency's findings and conclusions on questions of fact are prima facie true and correct. It is not the duty of the court to weigh the evidence before the Board or to determine the credibility of the witnesses. (*Mihalopoulos v. Board of Fire & Police Commissioners* (3d Dist. 1978), 60 Ill. App. 3d 590, 376 N.E.2d 1105; *Dante v. Police Board* (1st Dist. 1976), 43 Ill. App. 3d 499, 357 N.E.2d 549.) The reviewing court determines only whether there is sufficient evidence to support the Board's decision. (*Davern*, at 471; *Dante*, at 502.) While neither the trial court nor the appellate court may substitute its judgment for that of the administrative agency, the agency's decision should be set aside if it is not supported by the evidence, and an opposite conclusion is clearly evident. *Stanton v. Board of Fire & Police Commissioners* (1st Dist. 1976), 37 Ill. App. 3d 108, 345 N.E.2d 822; *Carlisi v. Illinois Liquor Control Com.* (1st Dist. 1969), 116 Ill. App. 2d 350, 253 N.E.2d 560.

Plaintiff contends that the findings of the Board that the money received by plaintiff did not constitute restitution and that plaintiff's acceptance of the money constituted conduct that brought discredit upon the police department were contrary to the manifest weight of the evidence. Plaintiff contends that his own testimony, plus the testimony of Woodfield Mall employees, Desmond and Loftus, establish that he lost $100 in wages from his part-time employment as a result of the incident with Gallo.

■■ The record shows that plaintiff was excused from work as a policeman for three days. It is undisputed that plaintiff did not work at his part-time position during the two-week period that coincided with his vacation period from the police department. Plaintiff testified that he did not work because his arm hurt. However, plaintiff did not notify the department that he was still injured, and he did not seek further medical treatment. It is also undisputed that plaintiff did not obtain approval from the court sergeant, or any of his supervisors, before accepting the alleged restitution. Plaintiff did not state in his case report that he received money allegedly as restitution, and the court was not informed of and did not approve the alleged restitution. Section 5—6—3.1 of the Unified Code of Corrections (Ill. Rev. Stat., 1976 Supp., ch. 38, par. 1005—6—3.1(c)(9)), which became effective August 2, 1976, provides that the court may require that a defendant "make restitution or reparation in an amount not to exceed actual loss or damage to property and pecuniary loss. The court shall determine the amount and conditions of payment." Although Lieutenant Herzfeld testified that the policy of the department in September 1976 concerning restitution was that an officer could receive restitution for loss of tangible items only, we note that the statute includes restitution for "pecuniary loss." However, it is clear from the language "the court *shall* determine" (emphasis added) that the basis for any

restitution must be proved and any restitution must be approved by the court as part of the disposition of the case. Thus, the Board's finding that the money received by plaintiff did not constitute restitution was supported by the evidence.

The record also supports the Board's finding that plaintiff's actions brought discredit to the police department. Police Chief Conroy and Lieutenant Herzfeld testified that plaintiff's conduct cast a bad reflection on the police system and caused adverse publicity against the department. Gallo testified that he felt "he bought his way out of the charges" and he told others, including his supervisor at the fire department, how he felt about the incident.

In order for the decision of an administrative agency to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly evident. (*Carlisi.*) A review of the record in the case at bar does not indicate that an opposite conclusion is clearly evident but rather indicates that there was ample evidence to support the decision. Therefore, we find that the Board's decision was not against the manifest weight of the evidence, and we affirm the decision of the circuit court of Cook County.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.