CLEMENT J. PIOTROWSKI, Plaintiff-Appellee, *v.* STATE POLICE MERIT BOARD OF THE STATE OF ILLINOIS *et al.*, Defendants-Appellants.

Fifth District   No. 79-324

Opinion filed June 10, 1980.—Rehearing denied July 23, 1980.

William J. Scott, Attorney General, of Chicago (Myra Turner, Assistant Attorney General, of counsel), for appellants.

R. Corydon Finch, of Anna, for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

This appeal originates from a judgment in the circuit court of Union County which held for the plaintiff, Clement J. Piotrowski, and thus

reversed the prior decision of the defendant, the State Police Merit Board of the State of Illinois (hereinafter the Merit Board). The Merit Board had dismissed plaintiff from employment as a patrolman with the Illinois State Police Department on charges of violating agency rules of conduct. The defendant argues on appeal that the plaintiff was afforded a fair and impartial hearing which resulted in a decision by the Merit Board which was supported by the manifest weight of the evidence. We reverse the decision of the circuit court.

The charges with which we are concerned were lodged against the plaintiff in a complaint which alleged that Trooper Piotrowski failed to follow State Police regulations governing the discovery of an abandoned vehicle; that he violated certain provisions of the Illinois Vehicle Code which concerned certification requirements relative to his purchase and sale of the same vehicle; and that he failed to obey an order issued by a superior officer which directed that Piotrowski submit to a polygraph examination in connection with the department investigation of his conduct.

On April 10, 1972, Piotrowski, while on an early morning patrol, discovered an abandoned vehicle along the roadside. Conflicting testimony was presented on the vehicle's location when discovered (significant because the State Police procedures involved apply only to vehicles "on a highway"). In a radio check with headquarters the plaintiff was notified that the vehicle had been reported stolen but that the same report may have been cancelled and that further verification would be sought. Plaintiff testified that he received radio confirmation that the stolen report had been cancelled, but the communications dispatcher, Deborah Cerney, testified that no such message appeared in the department's radio communications log which serves as a complete record of such transactions. At the time Piotrowski did not take custody of the automobile, a 1965 Chevrolet van, nor did he attach an identification tag to the vehicle. The Merit Board found that the plaintiff was guilty of neglect of duty in violation of Rule 63.100 of the Illinois State Police Rules of Conduct relative to his handling of this incident.

Piotrowski stated that he purchased the very same vehicle, while off duty, on May 2, 1972, when he allegedly came upon it stalled on a roadside. The plaintiff asserted that he had stopped of his own accord to assist the motorist involved who then and there offered to sell the van to him for $20, believing that the transmission needed repair. Plaintiff agreed to the purchase and upon examining the title noted it was issued in the name of Paul Childers. Piotrowski at no time requested identification from the party who sold him the vehicle, nor did he seek to verify ownership in any manner. Subsequently, the plaintiff made some minor repairs and resold it for $200.

The plaintiff admitted, by stipulation in the record, to a violation of section 3—112 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 3—112). The facts underlying the violation were that Piotrowski had failed to obtain a valid title to the vehicle concerned, as required by State law, and in turn, conveyed the vehicle, after falsifying the date of purchase, to another party while the certificate of title was still in the name of the former owner. Thus, his participation in the chain of ownership was totally unrecorded. In conjunction with the admission he also conceded to a violation of Rule 62.730 of the then current Rules of Conduct of the Illinois State Police, which stated that:

> "Police personnel shall not knowingly nor intentionally violate the laws of the United States, or the State of Illinois or the ordinances of any city, town or village in the State. As the primary duty of police personnel pertains to the enforcement of laws relating to highway traffic and transportation, it is particularly important that members of the Division shall, themselves, obey such laws and ordinances."

The events detailed above came to light in an investigation conducted by the State Police, set in motion when an insurance company requested information from the department on the van here involved, for which a theft claim had been filed. A police official learned of Piotrowski's contact with the vehicle during the insurance investigation, and after being questioned, the plaintiff made a voluntary statement about his involvement in its discovery, purchase and resale. In an attempt to determine whether the plaintiff had acted properly in respect to these events, Captain Joseph Genter later issued a written order that he submit to a polygraph examination and opportunities for the test were provided on March 5, 1973, and June 7, 1973. On both occasions Piotrowski expressed concern about the reliability of polygraph interpretation, uncertainty over his legal rights, his susceptibility to negative results because of a heart problem, and the effect of the examination on his own physical health. Pursuant to these concerns lengthy discussions occurred between the polygraph examiner and Piotrowski aimed at explaining the procedure and allaying any ill-founded concerns on his part. In addition, Genter arranged for a physical examination which resulted in assurances that the polygraph procedure would not be any threat to his health and that his physical condition would not interfere with its results. After the medical examination Piotrowski continued to delay the procedure, but he asserts that he never actually refused to take the test. However, he was informed that a failure to undergo the examination would be deemed a refusal. As a result of this action the Merit Board found that Piotrowski had violated Rule IV.C. of the then current Rules of Conduct of the Illinois State Police by his failure to obey a lawful written order of a

superior officer. In conclusion, the Merit Board found that the plaintiff was guilty of conduct which it could not condone and which could not be mitigated by evidence of his record as an officer. It therefore ordered his discharge, effective as of July 18, 1973.

It was the judgment of the circuit court of Union County that the findings of fact and the decision to discharge the plaintiff were against the manifest weight of the evidence, and that a full and fair hearing had not been provided by the Merit Board. We disagree.

■■ Appellee argues that the Merit Board was incompetent, literally inattentive, cavalier in its attitude toward the proceedings, and prejudiced in its disposition. In general, when a fair hearing is to be provided before an administrative body, it must present the party concerned with the opportunity to be heard in an orderly proceeding which is adapted to the nature and circumstances of the dispute. Due process of law is served where there is a right to present evidence and argument in one's own behalf, a right to cross-examine adverse witnesses, and impartiality in rulings upon the evidence which is offered. (*Lakeland Construction Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 1036, 1040, 379 N.E.2d 859.) We find no reason, whatsoever, to believe that these fundamentals of our tradition of jurisprudence were not adhered to in the present case, after examining the entire record. The appellant was represented by the Office of the Attorney General, while the appellee chose independent counsel whose diligent efforts before, during and after the administrative hearing have brought us to the present appeal. Thorough opportunity was given to prepare and present defenses to the charges advanced by the Superintendent of Police. Numerous exhibits were introduced on both sides, and the witnesses called were subjected to ample cross-examination. Every motion and objection presented appears to have received a degree of attention which can be characterized as exhibiting the utmost scrupulosity. In short, nothing in the record tends to substantiate appellee's arguments on this issue. They appear to be based on portions of the record interpreted out of context. For instance, plaintiff isolates two statements made by Chairman Tomlinson and argues that they are demonstrative of the general competence of the Merit Board. It is suggested the chairman's introductory remarks amount to an admission of incompetence because they informed counsel that the Merit Board members were not attorneys and that no attorney would be present to advise the Board in its rulings. The statement involved indicates, when read in context, that the chairman was concerned to convey the Merit Board's commitment to a complete and thorough inquiry into the facts by requesting an attitude of patience on the part of all concerned, and particularly on the part of counsel. Indeed, there was no statutory provision requiring Merit Board members to be lawyers or to have legal

counsel present in an advisory capacity (see Ill. Rev. Stat. 1977, ch. 121, pars. 307.3, 307.7, 307.14).

■■ In another instance the appellee charges that the chairman admitted to being asleep during the proceedings. Again, nothing in the record bears this out, and if such had been the case, it was incumbent upon counsel to provide the reviewing court with evidence of such behavior by deliberately noting such an allegation in the hearing record. The chairman did remark once that he must have been "asleep" during the marking of an exhibit at one point because he was unaware that the act had been accomplished. We can only assume that this expression was a rhetorical device, not evidence of a fact. This single comment is the only evidence we have that he was "asleep" at any time during the hearing. In light of what has been said we hold that the circuit court was in error in its determination that Piotrowski did not receive a fair hearing.

■■ Appellants argue that the determinations of the Merit Board were not against the manifest weight of the evidence. In considering this argument it is to be remembered that our purpose in reviewing administrative action is to assure that the agency has acted within the judicial bounds defined by law, to guard those statutory and constitutional rights guaranteed to one subject to agency actions, and to ascertain whether the order issued was supported by some foundation in the record. (*Curtis v. State Police Merit Board* (1953), 349 Ill. App. 448, 457, 111 N.E.2d 159.) It would not be proper for us to once again weigh the evidence presented before the Merit Board. This court has often indicated that it will not intervene in decisions which the legislature has properly placed within the boundaries of agency authority, provided that the requirements of due process are carefully observed:

"It is well established that a decision of an administrative agency should not be reversed unless it is contrary to the manifest weight of the evidence. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371; *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) Section 11 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 274) provides that the agency's findings and conclusions on questions of fact are prima facie true and correct. It is not the duty of the court to weigh the evidence before the Board or to determine the credibility of the witnesses. (*Mihalopoulos v. Board of Fire & Police Com.* (3rd Dist. 1978), 60 Ill. App. 3d 590, 376 N.E.2d 1105; *Dante v. Police Board* (1st Dist. 1976), 43 Ill. App. 3d 499, 357 N.E.2d 549.) The reviewing court determines only whether there is sufficient evidence to support the Board's decision. (*Davern*, at 471; *Dante* at 502.) While neither the trial court nor the appellate court may substitute its judgment for

that of the administrative agency, the agency's decision should be set aside if it is not supported by the evidence, and an opposite conclusion is clearly evident. *Stanton v. Board of Fire & Police Commissioners* (1st Dist. 1976), 37 Ill. App. 3d 108, 345 N.E.2d 822; *Carlisi v. Illinois Liquor Control Com.* (1st Dist. 1969), 116 Ill. App. 2d 350, 253 N.E.2d 560." *(Bromund v. Board of Fire & Police Commissioners* (1979), 72 Ill. App. 3d 826, 831-32, 391 N.E.2d 74.) See also *Paglini v. Police Board* (1975), 61 Ill. 2d 233, 239, 335 N.E.2d 480; *Hall v. Lyons* (1979), 71 Ill. App. 3d 1023, 1031, 389 N.E.2d 1309; *Pryka v. Board of Fire & Police Commissioners* (1978), 67 Ill. App. 3d 210, 213, 384 N.E.2d 784; *Dante v. Police Board* (1976), 43 Ill. App. 3d 499, 502, 357 N.E.2d 549; *Ceja v. State Police Merit Board* (1973), 12 Ill. App. 3d 52, 56, 298 N.E.2d 378, *cert. denied* (1974), 416 U.S. 923, 40 L. Ed. 2d 279, 94 S. Ct. 1920.

Appellee argues that all the evidence presented placed the abandoned vehicle in question on private property, in regard to an issue of operative fact, namely, whether or not it was discovered "on a highway." If such had been the case, it would not have been subject to State Police procedures which the plaintiff was charged with neglecting to follow. At the hearing Investigator Spruell testified that, along with Trooper Piotrowski and Detective Reineking, he surveyed the area in which the van was purportedly found on April 10. At that time the plaintiff pointed to a specific place on the road. In addition, there was other evidence that the vehicle was not discovered on private property but rather "on a highway." The Board resolved this issue in favor of the complainant. We conclude that the Merit Board's finding as to this fact and as to plaintiff's failure to follow the required procedures was not against the manifest weight of the evidence.

There was a direct conflict in the evidence regarding radio notification of the cancellation of the stolen vehicle report. The State Police dispatcher testified that the Department's official radio log contained no record that such notification was transmitted and the Board chose to credit that testimony and the log with belief. In any event, mere conflicting testimony is not a determinative basis on which to invalidate administrative findings according to the standards we have discussed. *Ceja v. State Police Board* (1973), 12 Ill. App. 3d 52, 58.

■■ Although the appellee argues that the order directing him to submit to a polygraph examination was tainted by what may be summarized as a lack of fair dealing, the record does not bear this out. Plaintiff had notice well in advance of June 7 that he would be subject to the examination, he was provided with a physical examination to allay his fears about the polygraph, and given the opportunity to research his legal rights in the law library of the Police Academy in Springfield. Piotrowski's superior

officer issued a written order which clearly directed that he must submit to the examination and he continued to delay the process. Both his superior officer and the Merit Board properly deemed this behavior to be a refusal to obey the order, especially considering the fact that plaintiff was informed at the time that his actions would be so interpreted. In addition, we do not believe that the decision to issue the order was in any way arbitrary. It followed upon the fruits of an investigation into the handling of a stolen vehicle with which the plaintiff had clearly been involved. The purpose of the polygraph order was to secure an accounting of his performance of a public trust and to verify statements made in explaining his actions. The order itself stated that test results could not be used against him in subsequent criminal proceedings and warned that his refusal to obey could be used against him in disciplinary proceedings. It is clearly established that a commanding officer has the inherent authority to order a policeman to undergo polygraph examination in regard to disciplinary investigations. This is necessarily so because of the very nature of police forces; they are paramilitary institutions in which systematic authority and discipline are required to ensure orderly and effective law enforcement. (*Williams v. Police Board* (1972), 8 Ill. App. 3d 345, 347, 290 N.E.2d 669; *Coursey v. Board of Fire & Police Commissioners* (1967), 90 Ill. App. 2d 31, 42, 234 N.E.2d 339.) For the same reason it appears settled that such an order need not be demonstrably or *prima facie* reasonable before it is required to be obeyed on penalty of discharge. (*Myers v. Police and Corrections Merit Board* (1978), 67 Ill. App. 3d 223, 228-29, 384 N.E.2d 805.) Accordingly, we hold that the order was in no way infirm and his disobedience subjected the plaintiff to the reasonable disciplinary actions of the Merit Board.

■■■ A police officer may be discharged where his conduct amounts to a substantial shortcoming which renders his continued employment detrimental to discipline and efficiency within the department, and while the severance authority must not be arbitrarily exerted, a police board is accorded considerable latitude in its decisions as to proper cause. (*Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 868, 335 N.E.2d 126.) In the instant case, Trooper Piotrowski conceded to having acted in violation of an Illinois statute and was found to have openly disregarded the orders of a superior officer. These transgressions can reasonably be considered sufficient cause for dismissal. Thus, we reverse the decision of the circuit court of Union County.

Reversed and remanded.

JONES, P. J., and KASSERMAN, J., concur.